DECISION
{¶ 1} Following a jury trial, defendant-appellant David Foster was convicted of trafficking in (transporting) and possession of heroin in an amount equal to or greater than 250 grams in violation of R.C. 2925.03(A)(2) and 2925.11, two accompanying major-drug-offender specifications under R.C.2941.1410, and conspiracy to traffic in heroin in violation of R.C. 2923.01(A)(2). The trial court imposed the mandatory ten-year prison term for the trafficking conviction, the mandatory ten-year prison term for the possession conviction, and a seven-year prison term for each MDO specification. These terms were ordered to be served consecutively. The trial court imposed an eight-year prison term for the conspiracy conviction, but ordered that it be served concurrently with the other prison terms for a total of thirty-four years in prison.
 {¶ 2} Bringing forth five assignments of error, Foster now appeals his convictions and sentence. For the following reasons, we affirm the findings of guilt but vacate the sentence except with respect to the conspiracy offense.
 {¶ 3} In August 2004, James Morris, Billy Harris and John Frazier planned for Frazier to transport, by car, over two pounds of heroin from California to Cincinnati, where it would be sold. The plan required Frazier to deliver the heroin to Harris in Cincinnati. The proceeds from the sale of the heroin would be divided among the three men. The heroin actually transported had a street value of $700,000.
 {¶ 4} While transporting the heroin, Frazier was stopped by Arkansas police officers for a traffic violation. During this stop, the heroin was discovered. Frazier agreed to cooperate with officers from the Regional Enforcement Narcotics Unit ("RENU") in an effort to implicate Harris and Morris in the plan to distribute heroin. Once in Cincinnati, Frazier telephoned Harris and arranged to have Harris meet him at a local hotel for delivery of the heroin.
 {¶ 5} Harris then contacted defendant-appellant David Foster to drive him to the hotel. Foster agreed. With RENU officers in surveillance, Harris arrived at the hotel in Foster's car. Harris and Foster were supposed to meet Frazier in a specific hotel room. Using a hidden camera, RENU officers, stationed in an adjoining room, were able to visually and audibly record the events that transpired in Frazier's room.
 {¶ 6} During the exchange of heroin in the hotel room, Frazier asked Harris when he could expect to receive expense money. Harris stated that it could be as soon as that evening. Foster affirmed Harris's answer by saying "yeah." Frazier then reached into a small refrigerator, removed a plastic trash bag, and handed it to Harris. Harris then handed the bag to Foster. Frazier testified at trial that Foster looked into the bag and then left the room, while Harris remained behind. Upon leaving the room, Foster was immediately arrested by RENU officers, who recovered the heroin. The officers then entered Frazier's room and arrested Harris and Frazier.
 {¶ 7} Foster was given his Miranda warnings prior to being interrogated by the RENU officers. During his interrogation, Foster told police that he had been an acquaintance of Harris's for ten years; that he knew Harris was a drug dealer; and that Harris often asked him to collect his mail while Harris was out of town. Foster told officers that Harris had "fronted" cocaine to him to sell on two previous occasions and that he was anticipating that Harris would give him some of the heroin to sell.
 {¶ 8} Foster signed forms consenting to a search of his house and a separate apartment he maintained. Foster kept no clothing at the apartment. While finding no incriminating evidence from the search of his house, officers did find material commonly used for packaging drugs and a digital scale in his apartment. Upon a search of his car, following his arrest at the hotel, police found a small notebook with columns titled "owe" and "pay."
 {¶ 9} In his first assignment of error, Foster contends that the trial court erred by overruling his motion to suppress the evidence that was seized from his house and his apartment. We are unpersuaded.
 {¶ 10} Foster argues that his consent to search his residences was coerced by officers and was thus involuntary. Foster testified at the suppression hearing that RENU officers had told him if they had to obtain search warrants, then the large dogs that Foster kept at his house would have to be shot. Foster testified that he only consented to the searches so that he would be permitted to accompany the officers to his house and to secure his dogs.
 {¶ 11} Agent Paul Fangman testified at the hearing that after Foster was read his Miranda rights, Foster consented to the searches of his residences by executing the consent-to-search forms. Fangman was not asked any questions on cross-examination concerning Foster's allegations that officers had threatened to shoot his dogs if he did not consent to the search.
 {¶ 12} During a suppression hearing, the weight of the evidence and the credibility of the witnesses are issues to be decided by the trial court sitting as the trier of fact.[1]
Here, the trial court chose to disbelieve Foster's allegation of coercion. We can find no error with that decision in light of Foster's execution of the consent-to-search form for his apartment, where no dogs lived and where the incriminating evidence was discovered. The first assignment of error is overruled.
 {¶ 13} In his second assignment of error, Foster maintains that his convictions for trafficking in and possession of the heroin involved allied offenses of similar import, and that the trial court erred by convicting him of both offenses. Foster argues that the act of transporting and possessing the same drug simultaneously constituted allied offenses of similar import under R.C. 2941.25. The assignment is without merit.
 {¶ 14} To support his position, Foster relies upon this court's decision in State v. Jennings,[2] where we held that a defendant may be indicted for both possession and trafficking, but that if the charges stem from a single transaction involving the same type and quantity of drugs, there can only be one conviction under R.C. 2941.25(A).[3]
 {¶ 15} Foster's reliance upon Jennings is misplaced because it preceded the Ohio Supreme Court's decision in State v.Rance.[4] In Rance, the Ohio Supreme Court held that two statutory offenses are allied offenses of similar import only if the elements of each offense "correspond to such a degree that the commission of one crime will result in the commission of the other."[5] The Rance test requires a strict textual comparison of the statutory elements, without reference to the particular facts of the case, to determine if one offense requires proof of an element that the other does not. If there are differing elements, the inquiry ends, and multiple convictions and sentences are allowed.
 {¶ 16} Since Rance, this court has held that possession of and trafficking in the same type and quantity of a controlled substance are not allied offenses because when the statutory offenses are compared in the abstract, each requires proof of an additional fact that the other does not.[6] A possession charge requires proof that a person obtained, possessed, or used heroin.[7] A trafficking charge, under R.C. 2925.03(A)(2), requires proof that the offender transported the heroin knowing or having reasonable cause to believe that the heroin was intended for sale or resale. Other appellate districts have also held that the statutory offenses of possession and trafficking are not allied.[8] In Bridges, the Eighth Appellate District explained that drug trafficking and drug possession are not allied offenses because the "trafficking statute imposes the additional element that possession of the [drug] is incident to preparation for shipment, transportation, delivery or distribution of the drug through a sale."[9] The second assignment of error is overruled.
 {¶ 17} In his third assignment of error, Foster contests the sufficiency and weight of the evidence underlying his convictions. An appellate court's function when reviewing a challenge to the sufficiency of the evidence supporting a criminal conviction is to examine the evidence admitted during the trial to determine whether such evidence, if believed by the trier of fact, would have convinced the average mind of the defendant's guilt beyond a reasonable doubt. The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found that the essential elements of the crime were proved beyond a reasonable doubt.[10]
 {¶ 18} When evaluating the manifest weight of the evidence, a reviewing court must review the entire record, weigh the evidence and all reasonable inferences, consider the credibility of the witnesses to the extent permissible on appeal, and determine whether, in resolving the conflicts in the evidence, the trier of fact clearly lost its way and created a manifest miscarriage of justice so that the conviction must be reversed and a new trial ordered.[11] The discretionary power to reverse should be invoked only in exceptional cases when the evidence weighs heavily against the conviction.[12]
 {¶ 19} Foster was convicted of the following statutory offenses. R.C. 2925.03(A)(2) states that no person shall "prepare for * * *, transport * * * a controlled substance, when the offender knows or has reasonable cause to believe that the controlled substance is intended for sale or resale by the offender or another person." R.C. 2929.11(A) provides that "no person shall knowingly, obtain, possess, or use a controlled substance." R.C. 2923.01(A)(2) provides that "no person shall * * * [a]gree with another person or persons that one or more of them will engage in conduct that facilitates the commission of [a felony drug-trafficking or possession offense]." R.C. 2929.01(X) provides that a major drug offender means "an offender who is convicted of * * the possession of, sale of, or offer to sell any drug * * * that consists of or contains * * * at least two hundred fifty grams of heroin."[13]
 {¶ 20} Our review of the record convinces us that the state presented sufficient evidence from which the jury could have found that it had proved all the essential elements of the crimes for which Foster was convicted. We further hold that, in resolving the conflicts in the evidence, the jury did not lose its way so that a new trial is required. The third assignment of error is overruled.
 {¶ 21} In his fourth assignment of error, Foster argues that the trial court erred in imposing a sentence for each MDO specification and ordering that his prison term for trafficking be consecutive to his prison term for possession based on facts neither found by a jury nor admitted by him. In support of his argument, Foster cites his Sixth Amendment right to trial by jury and Blakely v. Washington.[14]
 {¶ 22} Recently, in State v. Foster,[15] the Ohio Supreme Court held that certain sections of Ohio's sentencing code violated the Sixth Amendment and the Supreme Court's holding in Blakely. Among the sections found unconstitutional was R.C.2929.14(E)(4), which requires judicial findings before the imposition of consecutive sentences.[16] Further, the court determined that the provision requiring judicial findings before the imposition of a sentence for a MDO specification was unconstitutional.[17] The Foster court concluded that these sentencing provisions violated the Sixth Amendment because they required a judge to engage in fact-finding before imposing a sentence greater than the maximum term authorized by a jury verdict or a defendant's admissions.[18]
 {¶ 23} But the Foster court held that the unconstitutional provisions could be severed. Having severed the provisions, the court determined that judicial fact-finding is no longer required prior to the imposition of a sentence within the basic prison ranges of R.C. 2929.14(A), the imposition of consecutive sentences, or the imposition of an additional penalty for major-drug-offender specifications.[19]
 {¶ 24} Here, because the trial court's imposition of consecutive prison terms for possession and trafficking, as well as the imposition of a prison term for each MDO specification, was based on an unconstitutional statute, we hereby vacate those sentences and remand the cause for resentencing in light ofFoster.[20] But we emphasize that the trial court may impose any sentence within the applicable statutory ranges, including consecutive sentences. The fourth assignment of error is sustained.
 {¶ 25} In his fifth and final assignment of error, Foster contends that he was denied the effective assistance of counsel. We disagree.
 {¶ 26} Foster asserts that his trial counsel was ineffective because he failed to raise the issue of allied offenses and because he failed to object to the imposition of consecutive sentences and the MDO sentences. Regardless of whether there was any error, Foster has suffered no prejudice, as we have held that the trafficking and possession offenses were not allied, and as we have vacated the imposition of consecutive sentences and the imposition of sentences for the MDO specifications, and remanded for resentencing.[21] The fifth assignment of error is overruled.
 {¶ 27} In conclusion, we affirm the findings of guilt and the sentence for the conspiracy offense, but we vacate the sentence imposed for the MDO specifications and the consecutive sentences, and remand this case to the trial court for resentencing consistent with this decision and law.
Sentence vacated in part and cause remanded.
Hendon, J., concurs.
Painter, J., concurs separately.
[1] State v. Hill (Dec. 22, 1994), 1st Dist. Nos. C-910916 and C-940487, citing State v. Mills (1992), 62 Ohio St.3d 357,366, 582 N.E.2d 972.
[2] (1987), 42 Ohio App.3d 179, 573 N.E.2d 685.
[3] Id.
[4] (1999), 85 Ohio St.3d 632, 710 N.E.2d 699.
[5] Id. at 638.
[6] See State v. Salaam, 1st Dist. No. C-020324, 2003-Ohio-1021, at ¶ 16; State v. Gonzales,151 Ohio App.3d 160, 2002-Ohio-4937, 783 N.E. 2d 903, at ¶ 37.
[7] See R.C. 2925.11.
[8] See State v. Bridges, 8th Dist. No. 80171, 2002-Ohio-3771, at ¶ 75; State v. Alvarez, 12th Dist. No. CA2003-03-067, 2004-Ohio-2483, at ¶ 29.
[9] Bridges, supra, at ¶ 75.
[10] State v. Jenks (1991), 61 Ohio St.3d 259,574 N.E.2d 492, paragraph two of the syllabus.
[11] Id.; see, also, Tibbs v. Florida (1982), 457 U.S. 31,102 S.Ct. 2211.
[12] Tibbs, supra.
[13] See, also, R.C. 2941.141(B).
[14] (2004), 542 U.S. 296, 124 S.Ct. 2531.
[15] ___ Ohio St.3d ___, 2006-Ohio-856, ___ N.E.2d ___.
[16] Id. at paragraph three of the syllabus.
[17] Id. at paragraph five of the syllabus.
[18] Id. at ¶ 83.
[19] Id. at paragraphs two, four, and six of the syllabus.
[20] Id. at ¶ 104 (resentencing the proper remedy for sentences based upon unconstitutional statutes).
[21] See Strickland v. Washington (1984), 466 U.S. 668,104 S.Ct. 2052.