DECISION. *Page 2 
{¶ 1} Following a jury trial, defendant-appellant, Kendric Matthews, was convicted of one count of trafficking in cocaine under R.C.2925.03(A)(2) and one count of possession of cocaine under R.C. 2925.11. The trial court sentenced him to six years' imprisonment on the trafficking count and to eight years on the possession count, to be served consecutively. We affirm the findings of guilt, but vacate the sentences imposed.
 I. Facts {¶ 2} The record shows that Cincinnati Police Specialist David Hall investigated a complaint about drug sales at 658 Hawthorne Street, an apartment rented by Crystal Hart. He had received information that Matthews and Hart were selling crack cocaine from that location. Hall obtained a warrant to search the apartment.
 {¶ 3} Because the warrant was "high risk," Officer John Mercado, an experienced SWAT officer who had worked with the narcotics unit for many years, was assigned to execute the warrant. He and other officers announced their presence as they used a battering ram to force open the door.
 {¶ 4} Immediately upon entering the residence, Mercado saw Matthews and Hart in the kitchen. Matthews ran towards the bedroom, and Mercado followed. He saw that Matthews held a plastic baggie in one hand and a long, dark object in the other. Originally, Mercado feared that the long, dark object was a gun, but he later realized that it was a remote control. *Page 3 
 {¶ 5} The police officers ordered Matthews to stop, but he did not. They overcame Matthews and forced him to the ground. His hands automatically went toward his chest and were underneath him when he fell. When the officers lifted him off the floor, they found a crumpled baggie of crack cocaine and the remote control where his hands had rested.
 {¶ 6} The baggie contained just under 21 grams of crack cocaine, which Mercado testified was consistent with resale and inconsistent with personal use. Its estimated street value was between $500 and $1000, depending on how it was sold.
 {¶ 7} The police subsequently searched the residence. They found (1) an Ohio identification card bearing Matthews's name on a shelf above the kitchen sink; (2) a bag of powder cocaine on top of a hutch; (3) marijuana in the kitchen; (4) a digital scale in the living room; and (4) cash from the pockets of a pair of pants in the living room. Hart told the police that the powder cocaine, the marijuana, and some of the cash belonged to her. She did not admit to possession of the crack cocaine.
 II. Confrontation Clause {¶ 8} Matthews presents nine assignments of error for review. In his first assignment of error, he contends that the trial court's admission of hearsay evidence violated his right to confront the witnesses against him. He argues that the police officers should not have been allowed to testify that they had received complaints of drug activity at the Hawthorne Street apartment and that Hart and Matthews's names had surfaced in connection with that activity. This assignment of error is not well taken. *Page 4 
 {¶ 9} The Sixth Amendment to the United States Constitution states, "In all criminal prosecutions, the accused shall enjoy the right * * * to be confronted with the witnesses against him[.]" In Crawford v.Washington,[1] the United States Supreme Court held that the Confrontation Clause bars "testimonial statements of a witness who did not appear at trial unless he was unavailable to testify, and the defendant had a prior opportunity for cr0ss-examination."[2]
 {¶ 10} The Court distinguished between testimonial and nontestimonial hearsay and held that only testimonial statements implicate the Confrontation Clause.[3] Further, the Confrontation Clause does not bar the use of testimonial statements for purposes other than establishing the truth of the matter asserted.[4] Courts have permitted the introduction of testimonial statements where the testimony provided background information or context for the investigation, or explained a detective's conduct while investigating a crime.[5]
 {¶ 11} In this case, the hearsay statements were not admitted for their truth, but to show why the police officers had obtained and executed a search warrant for that particular address. This case differs substantially from cases where we have held that the admission of hearsay statements into evidence violated the Confrontation Clause. In those cases, the statements did not merely serve to explain how certain milestones in the investigation came to pass, but essentially constituted ex parte examinations that went to the heart of the state's case.[6] *Page 5 
 {¶ 12} Here, whether informants had told the police that Matthews and Hart were involved in prior drug activity at the apartment did not go to the heart of the state's case. No matter what the informants had said, the basis of Matthews's convictions was that police officers had caught him with a baggie of crack cocaine during the execution of a valid search warrant. Consequently, the introduction of the hearsay statements into evidence did not violate the Confrontation Clause.
 {¶ 13} Further, even if the trial court had erred in admitting the statements into evidence, a constitutional violation can be harmless error if it did not, beyond a reasonable doubt, contribute to the conviction.[7] Again, Mercado testified that he saw a baggie of what appeared to be crack cocaine in Matthews's hand as he ran from the police. Other officers testified how a baggie of crack cocaine was found underneath Matthews where he had fallen to the ground. The officers also found other indicia of drug activity in the apartment as they executed the warrant. Under the circumstances, we hold that the admission of the alleged hearsay statements did not contribute to Matthews's convictions and, therefore, that any error was harmless. We overrule Matthews's first assignment of error.
 III. Discovery {¶ 14} In his second assignment of error, Matthews contends that the trial court erred by failing to grant a mistrial when a police officer testified to a statement he had made that the state had failed to disclose in discovery. He argues that the evidence regarding the statement was unduly prejudicial and denied him a fair trial. This assignment of error is not well taken. *Page 6 
 {¶ 15} In response to a specific question from the state, Officer Hall testified that "[t]here were a couple of puppies in the kitchen area, next to the bathroom. * * * Mr. Matthews * * * was concerned about having somebody take care of those dogs for him. And so we made some phone calls to have somebody come, we attempted to have somebody come and take those dogs for Mr. Matthews." Matthews's counsel objected, stating that it was the first time he had heard about the statement. The trial court agreed that the state should have disclosed the statement. It overruled Matthews's motion for a mistrial, but it granted his motion to strike the testimony and instructed the jury that "any reference to the dogs is to be disregarded."
 {¶ 16} The state should have disclosed the statement under Crim.R. 16(B)(1)(a)(ii), which requires disclosure of any oral statement made by the defendant to any law enforcement officer.[8] But the trial court has broad discretion in regulating discovery and in determining the appropriate sanction for a discovery violation.[9] The court must inquire into the circumstances surrounding the discovery violation and impose the least severe sanction consistent with the purpose of the rules of discovery.[10]
 {¶ 17} Further, the decision whether to grant a mistrial lies within the court's discretion. A trial court should not order a mistrial merely because an error or irregularity has occurred, unless it affects the defendant's substantial rights.[11] The *Page 7 
court should declare a mistrial "only when the ends of justice so require and when a fair trial is no longer possible."[12]
 {¶ 18} Nothing in the record shows that Matthews was unduly prejudiced by the state's failure to disclose the statement.[13] Matthews did not contend that he had never been in the apartment before. More importantly, the court excluded evidence about the statement and instructed the jury to disregard it. We must presume that the jury followed the court's instruction.[14] Under the circumstances, we cannot hold that the trial court's decision to deny Matthews's motion for a mistrial was so arbitrary, unreasonable, or unconscionable as to connote an abuse of discretion.[15] We overrule Matthews's second assignment of error.
 {¶ 19} In his third assignment of error, Matthews contends that the state committed prosecutorial misconduct by withholding the statement and failing to comply with the discovery rules. The conduct of the prosecuting attorney during trial cannot be grounds for error unless the conduct deprives the defendant of a fair trial.[16] As we have previously stated, the failure to disclose the statement did not unduly prejudice Matthews or deny him a fair trial, particularly given that the trial court excluded evidence about the statement. Further, we cannot hold that any of the prosecutor's remarks during argument prejudicially affected Matthews's substantial rights.[17] Consequently, we overrule Matthews's third assignment of error. *Page 8 
 IV. Ineffective Assistance of Counsel {¶ 20} In his fifth assignment of error, Matthews contends that he was denied the effective assistance of counsel. He has not demonstrated that his counsel's representation fell below an objective standard of reasonableness or that, but for counsel's unprofessional errors, the results of the proceeding would have been otherwise. Therefore, he has failed to meet his burden to show ineffective assistance of counsel.[18] To the contrary, our review of the record shows that Matthews's counsel put on a thorough and well-planned defense. A defendant is not deprived of the effective assistance of counsel when counsel chooses, for strategic reasons, not to pursue every possible trial tactic.[19] Consequently, we overrule his fifth assignment of error.
 V. Photographic Evidence {¶ 21} In his sixth assignment of error, Matthews contends that the trial court erred in admitting into evidence a photograph depicting a small child at the scene. He argues that the photograph served no purpose but to inflame the jury, and that its prejudicial effect outweighed any probative value. This assignment of error is not well taken.
 {¶ 22} Properly authenticated photographs are admissible if their probative value outweighs the danger of material prejudice.[20] The decision whether to admit photographs into evidence lies within the trial court's discretion.[21] *Page 9 
 {¶ 23} In this case, the court allowed the photograph into evidence because it showed the location of the crack cocaine, which was a valid reason for its admission. The child in the photograph was Hart's daughter. As to the child's presence in the photograph, the court stated, "The fact that it contains a small child, it is what it is. If the child was naturally there and not planted there by law enforcement, and there's not going to be testimony that she was, it comes in." This reasoning was not so arbitrary, unreasonable, or unconscionable as to connote an abuse of discretion.[22] Further, the child's presence was not highlighted in the testimony. Under the circumstances, we cannot hold that the danger of unfair prejudice from the admission of the photograph outweighed its probative value. Therefore, we overrule Matthews's sixth assignment of error.
 VI. Manifest Weight {¶ 24} In his seventh assignment of error, Matthews contends that his convictions were against the manifest weight of the evidence. After reviewing the record, we cannot hold that the jury clearly lost its way and created such a manifest miscarriage of justice that we must reverse Matthews's convictions and order a new trial. Therefore, his convictions were not against the manifest weight of the evidence.[23] Matthews argues that Mercado was the only witness to testify that Matthews had the baggie of cocaine in his hand, and that Mercado's testimony was *Page 10 
not credible. But matters as to the credibility of witnesses are for the trier of fact to decide.[24] Consequently, we overrule Matthews's seventh assignment of error.
 VII. Speedy Trial {¶ 25} In his eighth assignment of error, Matthews contends that he was denied his right to a speedy trial. He argues that the state failed to try him within the time period set forth in R.C. 2945.71. This assignment of error is not well taken.
 {¶ 26} We first note that the state argues that Matthews has waived the issue because he failed to raise it below. But the Ohio Supreme Court and this court have held that the state has a mandatory duty to comply with the speedy-trial statutes. The accused's failure to object to a trial date outside the applicable time limit does not amount to acquiescence in that date and does not extend the time within which the state must try the accused.[25]
 {¶ 27} The state must try a person charged with a felony within 270 days of his or her arrest.[26] For computing time, each day during which the accused is held in jail in lieu of bail counts as three days.[27]
 {¶ 28} Extensions of the time period within which the state must try the accused are permissible only for the reasons expressed in R.C.2945.72.[28] R.C. 2945.72(H) states that "the period of any continuance granted on the accused's own motion, and the period of any reasonable continuance granted upon other than the accused's own motion" can extend the time within which the state must bring the *Page 11 
accused to trial. The state bears the burden to show that actions or events chargeable to the defendant have tolled enough time so that the defendant has been tried within the speedy-trial period.[29]
 {¶ 29} Since the triple-count provision applied in this case, the state had 90 days to bring Matthews to trial. Matthews was arrested on March 15, 2006. Due to a series of continuances at his request, the time was tolled from April 10, 2006, until June 20, 2006. His trial began on July 5, 2006. Consequently, only 42 days were attributable to the state, and Matthews was tried within the speedy-trial period.
 {¶ 30} Matthews contends that because he did not sign any of the entries granting continuances and did not agree to the continuances, he could not have knowingly and voluntarily waived his speedy-trial rights. But counsel may waive a defendant's right to be brought to trial within the speedy-trial period, and the waiver binds the defendant even if it was executed without the defendant's consent[30]
 {¶ 31} Matthews also argues that the judgment entries granting the continuances were not valid because they did not state the reason for the continuances. But this court has held that reasons are only required when the court acts sua sponte. It need not state a reason when the defendant requests the continuance.[31] We have stated, "When the defendant's request for a continuance is in the record, the absence of an explanation for the continuance in a journal entry should not allow a defendant to use the speedy-trial statute as a sword rather than the shield it was designed to be."[32] Consequently, we overrule Matthews's eighth assignment of error. *Page 12 
 VIII. Sentencing {¶ 32} In his fourth assignment of error, Matthews contends that trial court erred in sentencing him in violation of the Double Jeopardy Clause of the United States and Ohio Constitutions. He argues that the offenses of which he was convicted were allied offenses of similar import. This assignment of error is well taken.
 {¶ 33} Ohio's allied-offense statute[33] protects against multiple punishments for the same criminal conduct, thereby enforcing the prohibitions of the Double Jeopardy Clause of the United States and Ohio Constitutions.[34] In State v. Cabrales,[35] this court held that the offenses of possession of cocaine under R.C. 2925.11 and trafficking in cocaine under R.C. 2925.03(A)(2) are allied offenses of similar import.[36] We distinguished this court's previous decision inState v. Foster.[37] We incorrectly stated that Foster had involved a conviction under R.C. 2925.03(A)(1), when in fact Foster had also involved a conviction under R.C. 2925.03(A)(2).[38] Cabrales is currently pending before the Ohio Supreme Court.[39]
 {¶ 34} Subsequently, in State v. Hill,[40] we stated, "The state makes a compelling argument that Cabrales is `an aberration' and that this court should instead follow its earlier decision in State v.Foster. There, a different panel of this court applied State v.Rance[41] and concluded that possession and trafficking under R.C.2925.03(A)(2) are not allied offenses because the trafficking statute has an *Page 13 
additional element: that the possession of the drug must be incident to preparation for shipment, transportation, delivery, or distribution of the drug through a sale. The state cites no fewer than 15 cases from this and other appellate districts in support of its position thatFoster, and not Cabrales, properly applies the Rance test to the offenses at issue here."[42]
 {¶ 35} But we went on to state that although the state's argument was valid, "Cabrales is currently the law of this district, and we are bound to follow it."[43] In this case, tOo, we are bound to followCabrales. We also think it prudent at this juncture to overruleFoster to maintain consistency within this district until the Ohio Supreme Court decides the issue. Consequently, we sustain Matthews's fourth assignment of error. We vacate the multiple sentences imposed and remand the case to the trial court to enter a single conviction under either R.C. 2925.11(A) or R.C. 2925.03(A)(2).
 {¶ 36} In his ninth assignment of error, Matthews contends that trial court erred by sentencing him for a first-degree felony when he was only convicted of a second-degree felony. Matthews was convicted of trafficking in cocaine under R.C. 2925.03(A)(2). Because the amount of crack cocaine was more then ten grams, but less then 25 grams, the offense was a second-degree felony.[44] At the sentencing hearing the court stated that the offense was a second-degree felony, and the sentence imposed, six years' imprisonment, was within the statutory range for a second-degree felony.[45] The judgment entry does incorrectly state the offense was a first-degree felony. Consequently, we sustain Matthews's ninth assignment of error *Page 14 
and remand the case to the trial court to correct the clerical error in the judgment entry.
 IX. Summary {¶ 37} In sum, we affirm the findings of guilt in this case. We vacate the sentences imposed and remand the case to the trial court for further proceedings consistent with this decision.
Judgment affirmed in part and reversed in part, and cause remanded.
HILDEBRANDT, P.J., and CUNNINGHAM, J., concur.
[1] (2004), 541 U.S. 36, 124 S.Ct. 1354.
[2] Id. at 53-54; State v. Robinson, 1st Dist. No. C-060434,2007-Ohio-2388, ¶ 12.
[3] Crawford, supra, at 68; State v. Stahl, 111 Ohio St.3d 186,2006-Ohio-5482, 855 N.E.2d 834, ¶ 15-16; Robinson, supra, at ¶ 13.
[4] State v. Lewis, 1st Dist. Nos. C-050989 and C-060010,2007-Ohio-1485, ¶ 41; State v. Jordan, 167 Ohio App.3d 157,2006-Ohio-2759, 854 N.E.2d 520, ¶ 47.
[5] Lewis, supra, at ¶ 41.
[6] Robinson, supra, at ¶ 14-15; Lewis, supra, at ¶ 42-44.
[7] Robinson, supra, at ¶ 16.
[8] State v. Parson (1983), 6 Ohio St.3d 442, 444, 453 N.E.2d 689;State v. Penland (1998), 132 Ohio App.3d 176, 184, 724 N.E.2d 841.
[9] State v. Wiles (1991), 59 Ohio St.3d 71, 78, 571 N.E.2d 97;State v. Brewster, 1st Dist. Nos. C-030024 and C-030025, 2004-Ohio-2993, ¶ 36.
[10] Lakewood v. Papadelis (1987), 32 Ohio St.3d 1, 511 N.E.2d 1138, paragraph two of the syllabus; Penland, supra, at 186.
[11] Brewster, supra, at ¶ 67.
[12] Id., quoting State v. Broe, 1st Dist. No. C-020521, 2003-Ohio-3054, ¶ 36.
[13] Penland, supra, at 185.
[14] State v. Stallings, 89 Ohio St.3d 280, 286, 2000-Ohio-164,731 N.E.2d 159; Broe, supra, at ¶ 70.
[15] See State v. Clark, 71 Ohio St.3d 466, 470, 1994-Ohio-43,644 N.E.2d 331; Robinson, supra, at ¶ 22,
[16] State v. Keenan (1993), 66 Ohio St.3d 402, 405, 613 N.E.2d 203;State v. Brundage, 1st Dist. No. C-030632, 2004-Ohio-6436, ¶ 23.
[17] State v. Lott (1990), 51 Ohio St.3d 160, 165, 555 N.E.2d 293;Brundage, supra, at ¶ 23.
[18] Strickland v. Washington (1984), 466 U.S. 668, 687-689,104 S.Ct. 2052; State v. Hirsch (1998), 129 Ohio App.3d 294, 314-315,717 N.E.2d 789.
[19] State v. Brown (1988), 38 Ohio St.3d 305, 319, 528 N.E.2d 523;State v. Burrell, 1st Dist. No. C-030803, 2005-Ohio-34, ¶ 30.
[20] State v. Maurer (1984), 15 Ohio St.3d 239, 473 N.E.2d 768, paragraph seven of the syllabus; State v. Reid, 1st Dist. No. C-050465,2006-Ohio-6450, ¶ 26.
[21] Maurer, supra, at 264-265.
[22] See Clark, supra, at 470; State v. Heard (Aug. 13, 1999), 1st Dist. No. C-980443.
[23] State v. Thompkins, 78 Ohio St.3d 380, 387, 1997-Ohio-52,678 N.E.2d 541; Brewster, supra, at ¶ 78.
[24] State v. Bryan, 101 Ohio St.3d 272, 2004-Ohio-971,804 N.E.2d 433, ¶ 116; Burrell, supra, at ¶ 28.
[25] State v. Cutcher (1978), 56 Ohio St.2d 383, 384-385,384 N.E.2d 275; State v. Singer (1977), 50 Ohio St.2d 103, 105-106,362 N.E.2d 1216; Burrell, supra, at ¶ 7; Hirsch, supra, at 316.
[26] R.C. 2945.71(C)(2).
[27] R.C. 2945.71(E).
[28] State v. Saffel (1988), 35 Ohio St.3d 90, 91, 518 N.E.2d 934;Hirsch, supra, at 315.
[29] Brewster, supra, at ¶ 6; Hirsch, supra, at 315-316.
[30] State v. McBreen (1978), 54 Ohio St.2d 315, 376 N.E.2d 593, syllabus; State v. Stamps (1998), 127 Ohio App.3d 219, 226,712 N.E.2d 762.
[31] State v. Terrell, 1st Dist. No. C-020194, 2003-Ohio-3044, ¶ 21;Stamps, supra, at 224-226.
[32] Id. at 225.
[33] R.C. 2941.25.
[34] State v. Moore (1996), 110 Ohio App.3d 649, 653,675 N.E.2d 13.
[35] 1st Dist. No. C-050682, 2007-Ohio-857.
[36] Id. at ¶ 36.
[37] 1st Dist. No. C-050378, 2006-Ohio-1567.
[38] Cabrales, supra, at ¶ 34-35; Foster, supra, at ¶ 16.
[39] 114 Ohio St.3d 1410, 2007-Ohio-2632, 867 N.E.2d 844.
[40] 1st Dist. C-060711, 2007-Ohio-4465.
[41] 85 Ohio St.3d 632, 1999-Ohio-291, 710 N.E.2d 699.
[42] Hill, supra, at ¶ 12.
[43] Id. at ¶ 13.
[44] R.C. 2925.03(C)(4)(e).
[45] R.C. 2929.14(A)(2). *Page 1