OPINION. *Page 2 
{¶ 1} Defendant-appellant Dominique Tapplar was convicted of one count of trafficking in cocaine[1] and one count of cocaine possession.[2]
He has raised four assignments of error that we find to be without merit. In a supplemental assignment of error, he argues that the two counts involved allied offenses of similar import and should have been merged into one conviction. On that point, we must agree.
 "Bootleg" Cab Driver Provides Full Service {¶ 2} Cincinnati police officers working in the Regional Enforcement Narcotics Unit set up a controlled buy at a Shell gas station through a confidential informant. The police had worked with this informant on two or three prior occasions. At the time established by the informant, he called Tapplar. Officer Ryan Hudson listened to the call. During the call, Tapplar arranged to meet the informant.
 {¶ 3} Hudson and the informant drove to the location chosen by Tapplar. Hudson called for other officers, giving a description of Tapplar and the van he was driving. When they arrived, the officers surrounded the van and demanded that Tapplar show his hands. Officers saw Tapplar place his hands underneath the driver's seat and reach between his legs, with his head "down in the steering wheel." Officers had to order Tapplar to show his hands four or five times before he complied.
 {¶ 4} Tapplar was removed from the vehicle. Officers immediately saw a bag of powder cocaine on the floor where Tapplar had been reaching. While Tapplar was being processed, Officer Hudson had the opportunity to hear his voice and *Page 3 
identified it as the voice he had heard during the phone conversation with the informant.
 {¶ 5} At trial, Tapplar testified that the van belonged to his girlfriend and that he used it as a "bootleg" taxicab. He testified that the drugs were not his. He said that he had driven to the location to pick up a customer. While Tapplar claimed that he had been bending over to hide a can of beer from police, no beer cans were found in the vehicle. His girlfriend testified that there were beer cans in the van when she went to pick it up from the police impound lot. On cross-examination, she admitted that there were no beer cans in any of the photographs taken of the interior of the van at the scene of the arrest. Additionally, a number of witnesses testified to Tapplar's good character. But none of them were aware that Tapplar had been using the van as an illegal bootleg cab.
 {¶ 6} Tapplar waived his right to a trial by jury, and the case was tried to the bench. Tapplar was convicted of both charges. Prior to sentencing, Tapplar retained new counsel and filed a motion for a new trial, claiming that his jury waiver had not been knowing, voluntary, and intelligent. The trial court denied the motion and sentenced him to two years in prison on each count.
 The Right of Confrontation- Confidential Informants {¶ 7} In his first assignment of error, Tapplar argues that his right to confront the witnesses against him was violated because the confidential informant did not testify at trial. We disagree. *Page 4 
 {¶ 8} Tapplar argues that the state was required to disclose the identity of the informant.[3] But the record reflects that the state gave the name, date of birth, and possible social-security number to Tapplar's counsel. Additionally, the record reflects that private investigators were made available to the defense, and they were given the opportunity to locate the witness. Officer Hudson testified that he had tried to locate the informant, but was unable to do so. The informant had completed his obligation to the police department a year before and was no longer being used. Tapplar's trial counsel conceded that the state had done everything possible to bring the informant to court.
 {¶ 9} Other than making the general assertion that having the informant available would have assisted the defense in trial preparation, Tapplar failed to argue how the informant's presence would have assisted him.
 {¶ 10} More fundamentally, a review of the testimony of Officer Hudson reveals that there were no statements from the informant that were admitted into evidence. When questions that would have tended to elicit such statements were asked, they were objected to by Tapplar's trial counsel and not allowed by the trial court. In fact, after some back and forth, the trial court finally instructed the witness, "Just don't tell us what the informant said. You can talk about what you heard the defendant say."
 {¶ 11} The Sixth Amendment to the United States Constitution states, "In all criminal prosecutions, the accused shall enjoy the right * * * to be confronted with the witnesses against him * * *." In Crawford v.Washington, the United States Supreme Court equated witnesses with those who "bear testimony" against the *Page 5 
accused and thus make "a declaration or affirmation * * * for the purpose of establishing or proving some fact."[4] The Court held that the Confrontation Clause bars the "admission of testimonial statements of a witness who did not appear at trial unless he was unavailable to testify, and the defendant had a prior opportunity for cross-examination."[5] Since nothing said by the informant was admitted into evidence, any failure of the state to produce the informant at trial did not implicate Tapplar's right to confrontation. Therefore, we overrule his first assignment of error.
 Waiver of Right to Jury Trial {¶ 12} In his second assignment of error, Tapplar argues that his jury waiver was not knowing, voluntary, and intelligent.
 {¶ 13} After Tapplar was found guilty by the trial court, he retained new counsel and filed a motion for a new trial. Tapplar claimed that his previous counsel had not informed him that he was entitled to a jury of his peers. The trial court held a hearing on the motion, during which Tapplar testified that he was told that "if I go with the jury, I would get 12 old white women from Cheviot who would convict me because I'm a black man, going in front of the police. But she told me that the best thing for me to do is go with the bench trial because the judge was a fair judge, and he was one of the fairest judges on the bench and he used to be a defense attorney, one of the fairest defense attorneys; and that he knew all the games that police play, and that he would have the best knowledge of the trial because it's been going on for so long." *Page 6 
 {¶ 14} When asked if he later learned that he could get more than just white females on his jury, he said, "[S]peaking with other counsel and speaking with people, they told me that probably is not what would happen, probably would have got a jury of my peers."
 {¶ 15} Prior to accepting Tapplar's jury waiver, the trial court had conducted a hearing. During the hearing, Tapplar gave his age and educational background, admitted that he could read and write, admitted that he had read the jury waiver and signed it, admitted that he had discussed the waiver with counsel, admitted that he understood what it meant to waive a trial by jury, and admitted that he had no questions about what that meant. He also admitted that he understood that, if the waiver was accepted, the case would be tried before the trial court, and the trial court would hear the evidence and decide his guilt or innocence.
 {¶ 16} This colloquy was extensive — much more extensive than what is now required by the Ohio Supreme Court in jury-waiver cases.[6] InState v. Lomax, the court noted that "`a defendant need not have a complete or technical understanding of the jury trial right in order to knowingly and intelligently waive it. * * * [I]f the record shows a jury waiver, the verdict will not be set aside except on a plain showing that the waiver was not freely and intelligently made.'"[7]
 {¶ 17} In this case, the record shows a jury waiver, and Tapplar failed to make a plain showing that the waiver was not freely and intelligently made. While Tapplar testified that he did not understand his rights because previous counsel had misinformed him, we note that previous counsel did not testify at the hearing. The trial court was in the best position to weigh the credibility of Tapplar's assertion. The *Page 7 
decision not to find his claim credible was not an abuse of discretion. Therefore, we overrule his second assignment of error.
 Sufficiency and Weight of the Evidence {¶ 18} In his third and fourth assignments of error, Tapplar claims that his convictions were based upon insufficient evidence and were against the manifest weight of the evidence. We disagree.
 {¶ 19} In a challenge to the sufficiency of the evidence, the question is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found all the essential elements of the crime beyond a reasonable doubt.[8] In a challenge to the weight of the evidence, we must review the entire record, weigh the evidence, consider the credibility of the witnesses, and determine whether the trier of fact clearly lost its way and created a manifest miscarriage of justice.[9]
 {¶ 20} A conviction for drug possession required a showing that Tapplar had knowingly obtained, possessed, or used a controlled substance.[10] A conviction for drug trafficking required a showing that he had knowingly sold or offered to sell a controlled substance.[11]
 {¶ 21} Tapplar first argues that no one at trial could identify him as the person on the other end of the telephone conversation with the informant. This assertion is not supported by the record. Officer Hudson testified that he had the opportunity to hear Tapplar's voice while questioning him at the police station, and *Page 8 
that he identified it as the voice he had heard during the phone conversation with the informant. While Hudson did not hear the initial conversation when the sale of the cocaine was negotiated, he heard the subsequent conversation regarding the location of the sale and heard Tapplar describe the vehicle he would be in.
 {¶ 22} Tapplar also argues that the state failed to show that the drugs found on the floor of the "bootleg" cab were his, maintaining that they could have been left by one of his customers. Since the bag containing the cocaine was not tested for fingerprints, he continues, the state failed to establish possession. We disagree.
 {¶ 23} Possession can be actual or constructive.[12] Constructive possession occurs when "an individual exercises dominion and control over an object, even though that object may not be within his immediate physical possession."[13] To exercise dominion and control the individual must be "conscious of the presence of the object."[14]
 {¶ 24} In this case, officers testified that the drugs were found in the area where Tapplar had been seen reaching. The drugs were in plain view once Tapplar was removed from the vehicle. This was sufficient circumstantial evidence of dominion and control over the cocaine in this case and sufficient circumstantial evidence that Tapplar was conscious of the presence of the drugs.
 {¶ 25} And based upon this record, we cannot conclude that the trial court lost its way when it found Tapplar guilty of drug trafficking and drug possession. Therefore, we overrule his third and fourth assignments of error. *Page 9 
 Allied Offenses {¶ 26} In a supplemental assignment of error, Tapplar contends that the trial court should have merged the convictions in this case because they involved allied offenses of similar import. We agree.
 {¶ 27} In State v. Cabrales, this court held that the offense of possession under R.C. 2925.11(A) and the offense of trafficking under R.C. 2925.03(A)(2) are allied and of similar import.[15] While the state asks this court to reconsider its position in Cabrales, we decline to do so. In State v. Matthews, this court followed Cabrales and expressly overruled a prior conflicting case from this court to clarify that Cabrales is the law of this district.[16] Based uponCabrales, we sustain Tapplar's supplemental assignment of error.
 Conclusion {¶ 28} Tapplar's four assignments of error are overruled. His supplemental assignment of error is sustained. The judgment of the trial court is affirmed in part with respect to the findings of guilt. But the sentences are vacated, and this cause is remanded for the trial court to enter one conviction and sentence for either drug trafficking or drug possession.
Judgment affirmed in part, sentences vacated, and cause remanded.
PAINTER, P.J., and SUNDERMANN, J., concur.
[1] R.C. 2925.03(A)(2).
[2] R.C. 2925.11(A).
[3] See State v. Williams (1983), 4 Ohio St.3d 74,446 N.E.2d 779.
[4] (2004), 541 U.S. 36, 51, 124 S.Ct. 1354.
[5] Id. at 53-54.
[6] See State v. Lomax, 114 Ohio St.3d 350, 2007-Ohio-4277,872 N.E.2d 279.
[7] Id., quoting State v. Bays (1999), 87 Ohio St.3d 15, 19-20,1999-Ohio-216, 716 N.E.2d 1126.
[8] State v. Jenks (1991), 61 Ohio St.3d 259, 574 N.E.2d 492, paragraph two of the syllabus.
[9] State v. Thompkins, 78 Ohio St.3d 380, 387, 1997-Ohio-52,678 N.E.2d 541.
[10] R.C. 2925.11(A).
[11] R.C. 2925.03(A)(1).
[12] In re Jones, 1st Dist. No. C-060873, 2007-Ohio-5973, ¶ 3, citingState v. Thomas, 1st Dist. No. C-020282, 2003-Ohio-1185, ¶ 9.
[13] Id.
[14] Id., citing State v. Hankerson (1982), 70 Ohio St.2d 87, 91,434 N.E.2d 1362.
[15] State v. Cabrales, 1st Dist. No. C-050682, 2007-Ohio-857, discretionary appeal accepted, 114 Ohio St.3d 1410, 2007-Ohio-2632,867 N.E.2d 844.
[16] State v. Matthews, 1st Dist. Nos. C-060669 and C-060692,2007-Ohio-4881, ¶ 35 *Page 1