The STATE of Ohio, Appellee,

v.

PENLAND, Appellant.

[Cite as *State v. Penland* (1998), 132 Ohio App.3d 176.]

Court of Appeals of Ohio,
First District, Hamilton County.

No. C–970387.

Decided Dec. 31, 1998.

178

*Joseph T. Deters,* Hamilton County Prosecuting Attorney, and *Jennifer E. Day,* Assistant Prosecuting Attorney, for appellee.

*Robert R. Hastings, Jr.,* for appellant.

SHANNON, Judge.

Defendant-appellant, Alex Penland, has taken the instant appeal from the judgment of conviction entered upon jury verdicts of guilty of carrying a concealed weapon and having a weapon while under a disability. The appellant presents on appeal five assignments of error. Finding no error in the proceedings below prejudicial to the appellant, we affirm the judgment of the trial court.

The charges against the appellant arose in connection with the events of December 31, 1996. On that date, at approximately 9:30 p.m., Cincinnati Police Officer Steve Pickens was on uniformed patrol in a marked cruiser, when he was dispatched to an address in Cincinnati's west end to investigate a report that a man had discharged a firearm into the air. The dispatch provided a description of the man, including his height, weight, race, and distinctive attire. When Officer Pickens arrived at the address given, he found no one there.

Twenty minutes later, Officer Pickens returned to the address provided in the dispatch. There, the officer saw the appellant, who matched the dispatch's description of the suspect. The officer approached the appellant and expressed a "need to talk to" him. At this, the appellant "turned * * *, grabbed at [the] waistband [of his trousers] and ran * * * ." Officer Pickens pursued the appellant on foot and observed the appellant withdraw a handgun from the waistband of his trousers. The officer transmitted that fact over his shoulder-mounted radio, along with a physical description of the appellant, the direction of the pursuit, and a request for assistance. Officer Pickens drew his own weapon, ordered the appellant to drop his gun, and observed as the appellant, while in flight, first threw the gun into the shrubbery in front of a YMCA building and then cast away several objects that he had pulled from the pocket of his trousers. The appellant then stopped running, and Officer Pickens placed him under arrest.

With the help of the police officers who had responded to his call for assistance, Officer Pickens recovered from the shrubbery fronting the YMCA a cocked nine-millimeter semiautomatic handgun containing one chambered round and two additional rounds of ammunition. A subsequent test-fire of the gun showed it to

be operable. Officer Pickens also recovered two additional rounds of nine-millimeter ammunition from an area adjacent to the site of the arrest, where the officer had seen the appellant discard the contents of his pocket.

Officer Pickens testified at trial that when he asked the appellant why he had fled, the appellant cited his fear that the officer would discover marijuana that he had concealed on his person. The appellant offered at trial his own testimony in support of this theory of defense. In his testimony, the appellant denied possessing or firing a gun that night. He asserted that his flight was prompted instead by his fear that Officer Pickens would discover the marijuana concealed in his right-hand coat pocket. He stated that, as he ran, he withdrew the marijuana from his pocket and threw it to the ground. However, except to question the diligence and honesty of the arresting and assisting police officers, the appellant could not explain why a search by the police that night, retracing the path of the foot pursuit, revealed no such contraband.

## I

In his first assignment of error, the appellant contends that the trial court erred in permitting the state to play for the jury an audiotape of Officer Pickens's radio transmission during his pursuit of the appellant. We disagree.

Officer Pickens, while pursuing the appellant, contemporaneously transmitted over his radio a physical description of the appellant, the direction of the pursuit, his observation of a gun in the appellant's right hand, his observation of the appellant's disposal of the gun in the shrubbery next to the YMCA, and his apprehension of the appellant a short distance away. Over defense counsel's objection, the trial court permitted the state to play for the jury, during the direct examination of Officer Pickens, an audiotape of the officer's radio transmission. At the close of the state's case-in-chief, however, the court declined to admit the audiotape into evidence, on the ground that the jurors might unduly emphasize it in their deliberations.

The appellant argues on appeal, as defense counsel asserted below, that the statements contained in the audiotape constituted inadmissible hearsay. The state contends, to the contrary, that Evid.R. 801(D)(1)(b) operated to exempt the recorded statements from the hearsay definition, because the statements were offered to rebut the defense's implicit charge that Officer Pickens's version of the events in question was a recent fabrication. We find neither argument persuasive.

The appellant was charged with carrying a concealed weapon and having a weapon while under a disability. The taped statements were probative of the issue of whether the appellant had in his possession the handgun that Officer

Pickens recovered from the YMCA shrubbery. The statements were thus relevant to the charged offenses. See Evid.R. 401.

■ The out-of-court statements embraced in the audiotape were offered by the state to prove the truth of the matters therein asserted. They, therefore, constituted hearsay as defined under Evid.R. 801(C) and, as such, were subject to the hearsay rule set forth in Evid.R. 802.

■ Evid.R. 801(D)(1)(b) excepts from the definition of hearsay an out-of-court statement of a witness that is "consistent with his [trial] testimony and is offered to rebut an express or implied charge against him of recent fabrication or improper influence or motive." Defense counsel, in his opening statement, proposed to present at trial "some discussion and some documents about the amount of money that [the appellant] had on his person when he was arrested and turned into the [Hamilton County] Justice Center." This, counsel asserted, would aid the jury in assessing Officer Pickens's truthfulness and credibility. The state then called Officer Pickens as its first witness and, on direct examination of the officer, presented evidence that the appellant had in his possession $700 in cash when he was arrested, but only $600 when he was processed at the Justice Center. When asked to explain the $100 discrepancy, Officer Pickens denied that he had stolen the missing money and could only speculate that he had miscounted the cash found on the appellant at the time of his arrest. The state then, at the end of Officer Pickens's direct examination, successfully argued that the audiotape should be played for the jury to "rebut [defense counsel's] allegations of fabrications."

Under these circumstances, the audiotape cannot be said to have been offered in rebuttal to an implicit or express charge by the defense that Officer Pickens's version of the events in question was a recent fabrication. The import of defense counsel's allusion in his opening remarks to the $100 discrepancy was vague at best, and did not become apparent until the state, in a valid effort to defuse the matter, introduced it on direct examination of Officer Pickens. Defense counsel, in his opening statement did not, as he could not, present evidence, and the defense, by virtue of defense counsel's opening remarks, did not assume an obligation to offer evidence challenging Officer Pickens's veracity. Defense counsel did, in fact, pursue the matter of the $100 discrepancy in his cross-examination of Officer Pickens and in his direct examination of defense witnesses. However, counsel did not do so until after the state itself had, on direct examination of Officer Pickens, raised the spectre of the officer's dishonesty and then vanquished it with his recorded out-of-court statements. In the absence of an implicit or express charge by the defense of "recent fabrication" as contemplated by Evid.R. 801(D)(1)(b), the rule did not operate to exempt Officer Pickens's recorded statements from the definition of hearsay. See *State v.*

*Abdur–Rahman* (Oct. 23, 1996), Hamilton App. No. C–950942, 1996 WL 603796, unreported (holding that defense counsel's comment in opening statement that a sex-offense victim was "sad, confused and disturbed" did not alone constitute a charge of recent fabrication or improper motive as contemplated by Evid.R. 801[D][1][b] ).

■ The statements embraced in the audiotape were, however, admissible at trial under the Evid.R. 803(1) exception to the hearsay rule. Evid.R. 803(1) provides a hearsay exception for an out-of-court statement "describing or explaining an event or condition," if the statement was made contemporaneously with or immediately after the declarant perceived the event or condition, unless the circumstances under which the statement was made suggest a lack of trustworthiness. Officer Pickens, while pursuing the appellant, transmitted over his radio a description of the appellant, the appellant's possession and disposal of the gun, and his apprehension. Each of the taped statements from that radio transmission described an event or condition perceived by the officer, either as he perceived it or immediately thereafter. The circumstances surrounding the officer's transmission of the statements, especially the perilous nature of the officer's pursuit of the appellant, supply sufficient indicia of the statements' trustworthiness. We, therefore, conclude that the statements were admissible at trial under Evid.R. 803(1).

■ This conclusion does not, however, end our inquiry. The statements in the audiotape conveyed essentially the same information conveyed by Officer Pickens in his testimony at trial. Thus, the statements, while admissible under Evid.R.803(1), were susceptible to a challenge under Evid.R. 403(B) on the ground that they were needlessly cumulative. We conclude, however, that the trial court did not abuse the discretion conferred under Evid.R. 403(B) by admitting the statements, when their "probative value" cannot be said to have been "substantially outweighed by [the] consideration of * * * [the] needless presentation of cumulative evidence." See *State v. Campbell* (1994), 69 Ohio St.3d 38, 51, 630 N.E.2d 339, 351.

Upon our determination that the statements contained in the audiotape were admissible under the Evid.R. 803(1) exception to the hearsay rule, we hold that the trial court did not err by permitting the state to play the audiotape at trial. We, therefore, overrule the first assignment of error.

## II

The appellant, in his second assignment of error, challenges the trial court's exercise of its discretion in admitting at trial evidence in the form of (1) testimony by Officer Pickens to an incriminating statement by the appellant regarding his

possession of the gun, and (2) photographs of the appellant taken after his arrest. Although aspects of this challenge are meritorious, the evidence's admission does not mandate a reversal of the appellant's convictions.

## A

The state, in its response to the appellant's discovery demand, disclosed only the appellant's statement, "I ran because I had a joint of weed and I was scared." However, in response to defense counsel's inquiry on cross-examination into whether the appellant had denied possessing the handgun recovered from the YMCA shrubbery, Officer Pickens replied, "At some point during the interview process, yes. * * * [The appellant] said, 'You didn't see me with that gun.'" Defense counsel objected and moved for a mistrial, on the ground that the state's failure to disclose the appellant's statement constituted a discovery violation. The trial court overruled the objection and denied the motion for a mistrial.

Crim.R. 16(B)(1)(a)(ii) requires the state, in response to a criminal defendant's discovery demand, to prepare and to provide to the defendant a written summary of "any oral statement * * * made by the defendant * * * to * * * any law enforcement officer[,]" if the statement is "available to, or within the possession, custody, or control of the state" and the statement's "existence * * * is known or by the exercise of due diligence may become known to the prosecuting attorney * * *." See State v. Bidinost (1994), 71 Ohio St.3d 449, 456, 644 N.E.2d 318, 324 (holding that Crim.R. 16[B][1][a][ii] required the state to "reduce * * * to writing, in the form of a summary," the defendant's oral statement to a police officer and to provide the written summary to the defense during discovery).

Implicit in the appellant's statement, as it was phrased, is the appellant's admission that he had possessed the handgun, but that he did not believe that Officer Pickens had seen it in his possession. The state's failure to adduce testimony to such an incriminating statement on direct examination of Officer Pickens suggests that the assistant prosecutor was unaware of the statement. Nevertheless, the Ohio Supreme Court has recognized that "[t]he police are part of the state and its prosecutorial machinery" and has thus held that a police officer's knowledge of a defendant's statement must, for purposes of discovery, be imputed to the state. State v. Wiles (1991), 59 Ohio St.3d 71, 78, 571 N.E.2d 97, 110 (quoting State v. Tomblin [1981], 3 Ohio App.3d 17, 18, 3 OBR 18, 20, 443 N.E.2d 529, 531). Therefore, Crim.R. 16(B)(1)(a)(ii) required the state to provide to the defense during discovery a written summary of the appellant's oral statement to Officer Pickens, and the state, in failing to do so, violated Crim.R. 16(B)(1)(a)(ii).

Crim.R. 16(E)(3) vests the trial court with the discretion to prescribe an appropriate sanction for a Crim.R. 16 discovery violation. The rule authorizes the court to "order [the nondisclosing] party to permit the discovery or inspection, [to] grant a continuance, or [to] prohibit the party from introducing in evidence the material not disclosed, or * * * [to] make such other order as it deems just under the circumstances." A trial court's admission of undisclosed evidence that is discoverable under Crim.R. 16 does not constitute an abuse of the discretion conferred under Crim.R. 16(E)(3), "unless the record shows that the prosecutor's discovery violation was willful, that foreknowledge [of the undisclosed evidence] would have benefited the accused in preparing his defense, or that the accused was unfairly prejudiced" by the admission of the statement. *State v. Otte* (1996), 74 Ohio St.3d 555, 563, 660 N.E.2d 711, 720; *State v. Parson* (1983), 6 Ohio St.3d 442, 6 OBR 485, 453 N.E.2d 689, syllabus.

In the proceedings below, defense counsel requested sanctions in the form of either the declaration of a mistrial or the exclusion of the undisclosed evidence. On the record before us, we are unable to conclude that the trial court abused its discretion when it denied the appellant's motion for a mistrial and admitted into evidence Officer Pickens's testimony to the appellant's oral statement.

1

First, we are not persuaded that the state willfully violated Crim.R. 16. As we noted *supra*, the state's failure to adduce testimony concerning the appellant's statement on direct examination of Officer Pickens suggests that the assistant prosecutor did not disclose the statement in discovery because the officer failed to make the prosecution aware of it. Such ignorance of the statement's existence will not relieve the state of the responsibility for disclosing the statement. However, in the absence of some evidence to the contrary, a suggestion in the record that the assistant prosecutor was not aware of the undisclosed statement will support a determination that the state's failure to disclose it was not willful. See *Wiles*, 59 Ohio St.3d at 79, 571 N.E.2d at 110.

2

Second, the record does not support a finding that the statement's disclosure would have benefited the appellant in preparing his defense. Had the statement been disclosed in discovery, defense counsel might not have asked, on cross-examination of Officer Pickens, the question that elicited the officer's testimony about the statement. On the other hand, disclosure of the statement in discovery would have ensured the assistant prosecutor's knowledge of the statement, and the prosecution itself could have elicited testimony on the appellant's incriminating statement on direct examination of Officer Pickens. See Evid.R. 804(B)(3) (a

hearsay exception for a statement against the declarant's interest). Moreover, nondisclosure of the statement cannot be said to have prejudiced the appellant in his decision to testify on his own behalf. The appellant took the stand well after the statement had been disclosed and thus with full knowledge of the statement and its implications.

### 3

Finally, and in addition to the allegedly prejudicial impact of the statement on the defense's trial strategy, the appellant cites the prejudicial effect of the statement on his credibility. Again, we note that the statement's disclosure in discovery likely would have prompted the prosecution to elicit testimony about the statement on direct examination of Officer Pickens. Therefore, any prejudice to the appellant resulting from the statement's impact on his credibility must be said to arise, not from the state's failure to disclose the statement in discovery, but from the statement itself.

A sanction imposed under Crim.R. 16(E)(3) for a discovery violation must be the least severe sanction that yet serves the purpose of the rules of discovery. *Lakewood v. Papadelis* (1987), 32 Ohio St.3d 1, 511 N.E.2d 1138, paragraph two of the syllabus. The defense did not, in the proceedings below, request a continuance to revise its trial strategy in the context of the appellant's statement. Under the circumstances, we are unable to conclude that the trial court's refusal to impose the more severe sanctions of exclusion or mistrial constituted an abuse of discretion.

### B

The balance of the appellant's second assignment of error goes to the admissibility of certain photographic evidence. The state, on direct examination of Officer Pickens, elicited testimony to the effect that the appellant emanated a strong odor of alcohol when he was placed under arrest. On cross-examination of the appellant, after the appellant had denied that he was intoxicated on the night in question, the state sought to introduce three photographs of the appellant depicting his physical state when he was taken to police headquarters shortly after his arrest. Defense counsel objected to the introduction of the photographs, but not on the ground, urged now on appeal, that the state's failure to disclose the photographs in discovery constituted a Crim.R. 16 violation. Counsel instead argued that the photographs were not probative of any issue presented by the charged offenses or even of the collateral issue of the appellant's state of intoxication, and that, even if they were probative of a material issue, their prejudicial nature substantially outweighed their probative value. The state countered that the photographs were admissible to impeach the appellant's

testimony that he was not intoxicated. The trial court, over defense counsel's objections, permitted the state to introduce the photographs on cross-examination of the appellant and, at the close of the state's case in rebuttal, admitted two of the three photographs into evidence.

Crim.R. 16(B)(1)(c) requires the state to disclose, in response to a criminal defendant's discovery demand, "photographs * * * available to or within the possession, custody or control of the state," if the photographs are "intended for use by the prosecuting attorney as evidence at the trial." The state introduced the matter of the appellant's intoxication on direct examination of Officer Pickens and pursued the matter in its cross-examination of the appellant, through questioning and the introduction of the photographs. The record thus suggests that the state intended to use the photographs at trial. Accordingly, Crim.R. 16(B)(1)(c) required the state to provide the photographs in response to the appellant's discovery demand. The failure to do so rendered the state subject to Crim.R. 16(E)(3) sanctions.

Defense counsel failed, however, to bring the discovery violation to the trial court's attention. The appellant thus waived any error arising from the court's failure to impose an appropriate sanction, unless the failure to impose a sanction can be said to rise to the level of plain error. See Crim.R. 52(B).

An error "does not constitute a plain error * * * unless, but for the error, the outcome of the trial clearly would have been otherwise." *State v. Long* (1978), 53 Ohio St.2d 91, 7 O.O.3d 178, 372 N.E.2d 804, paragraph two of the syllabus. To determine whether the trial court's failure to sanction the discovery violation constituted plain error, we must first examine whether the admission of the undisclosed discoverable evidence constituted error, *i.e.,* whether the record demonstrates "that the prosecutor's discovery violation was willful, that fore-knowledge [of the undisclosed evidence] would have benefited the accused in preparing his defense, or that the accused was unfairly prejudiced" by the evidence's admission. See *Otte,* 74 Ohio St.3d at 563, 660 N.E.2d at 720.

1

As we determined *supra,* the state's introduction of the matter of the appellant's intoxication on direct examination of Officer Pickens and its pursuit of the matter in its cross-examination of the appellant permit the inference that the state intended, from the outset, to use the photographs at trial. Thus, the record before us supports a finding that the state acted willfully in failing to disclose the photographs.

2

The record also supports a finding that foreknowledge of the state's intention to use the photographs at trial would have benefited the defense. As we noted *supra*, defense counsel offered a timely objection to the admission of the photographs into evidence on the ground of their relevance. The state then successfully gained the photographs' admission by arguing that they were relevant to, and thus admissible to impeach, the appellant's testimony that he was not intoxicated.

Based upon our inspection of the photographs, we cannot say that the trial court erred in its implicit determination that the photographs were probative of the appellant's state of intoxication. The appellant's intoxication at the time of the offense was not, however, an element of either the offense of carrying a concealed weapon or the offense of having a weapon while under a disability. The issue of intoxication was thus collateral to the issues presented by the charged offenses. The challenged photographs were relevant to the collateral issue of intoxication, but not to the issues presented by the charged offenses. The photographs were, therefore, inadmissible to prove the appellant's guilt of the charged offenses. See Evid.R. 401 and 402.

We find the state's prevailing argument below, that the photographs were admissible for the alternative purpose of impeaching the appellant's testimony on the issue of intoxication, unpersuasive. See *State v. Boggs* (1992), 63 Ohio St.3d 418, 422, 588 N.E.2d 813, 817 (noting that Evid.R. 608[B], as construed by the court in *State v. Kamel* [1984], 12 Ohio St.3d 306, 12 OBR 378, 466 N.E.2d 860, paragraph two of the syllabus, precludes the use of extrinsic evidence to impeach a witness's testimony on a collateral issue). We are excused from addressing the argument in detail, however, because we conclude that the trial court abused its discretion in admitting the photographs at trial, when the state's inquiry into the matter of the appellant's intoxication was, from the outset, improper under Evid.R. 404(B). See *State v. Williams* (1988), 38 Ohio St.3d 346, 353, 528 N.E.2d 910, 916, fn. 8 (in which the court stated that its determination that evidence was inadmissible under Evid.R. 404[B] preempted the issue of whether evidence was admissible under Evid.R. 608[B] to impeach a witness's credibility).

Evid.R. 404(B) precludes the admission of "evidence of other * * * acts * * * to prove the character of a person in order to show that he acted in conformity therewith" and then supplies a nonexhaustive list of exceptions to the rule, providing that "evidence of other * * * acts * * * may * * * be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity or absence of mistake or accident." R.C. 2945.59 similarly provides:

"In any criminal case in which the defendant's motive or intent, the absence of mistake or accident on his part, or the defendant's scheme, plan, or system in doing an act is material, any acts of the defendant which tend to show his motive or intent, the absence of mistake or accident on his part, or the defendant's scheme, plan, or system in doing the act in question may be proved, whether they are contemporaneous with or prior or subsequent thereto, notwithstanding that such proof may show or tend to show the commission of another crime by the defendant."

Evid.R. 404(B) and R.C. 2945.59 permit "other acts" evidence in a criminal proceeding if (1) substantial proof is adduced to show that the person against whom the evidence is offered committed the other act, (2) one of the matters enumerated in the rule or the statute is a material issue at trial, and (3) the evidence tends to prove the material enumerated matter. *State v. Lowe* (1994), 69 Ohio St.3d 527, 530, 634 N.E.2d 616, 619; *State v. Curry* (1975), 43 Ohio St.2d 66, 72 O.O.2d 37, 330 N.E.2d 720, syllabus.

Evidence of the appellant's intoxication, in the form of Officer Pickens's testimony, the appellant's testimony on cross-examination, and the photographs depicting the appellant's appearance, was not probative of, and thus was not admissible to prove, any of the matters enumerated under Evid.R. 404(B) or R.C. 2945.59. The state offered this "other acts" evidence solely for the purpose, impermissible under Evid.R. 404(B), of showing the appellant to be a person of bad character in order to suggest that he acted in conformity with that character in committing the charged offenses.

■ The defense, had it known that the state intended to offer the photographs into evidence at trial, could have anticipated and, by a pretrial motion *in limine* (followed by a timely objection at trial), precluded any inquiry into the inadmissible issue of the appellant's intoxication. The record, therefore, conclusively demonstrates that foreknowledge of the state's intention to use the photographs at trial would have benefited the appellant in preparing his defense. We further conclude that, under these circumstances, the only appropriate sanction for the state's failure to disclose the photographs in discovery would have been their exclusion from evidence at trial.

3

■ The final question presented by our inquiry into whether the trial court erred in admitting the undisclosed discoverable evidence is whether the appellant was "unfairly prejudiced" by the admission of the photographs at trial. This question is inextricably intertwined with the question determinative of our "plain error" analysis and, accordingly, is determinative of the challenge to the photographs' admission presented on appeal. In light of the substantial evidence

adduced below on the issue of the appellant's guilt of the charged offenses, we are unable to conclude that the outcome of the trial clearly would have been otherwise had the trial court appropriately sanctioned the discovery violation by excluding the photographs from evidence. We, therefore, hold that the trial court's failure to sanction the state's discovery violation did not rise to the level of plain error.

Finding no error prejudicial to the appellant in the admission of either the challenged testimony or the photographs, we overrule the second assignment of error.

### III

In his third assignment of error, the appellant asserts that he was denied his constitutional right to a fair trial by various instances of prosecutorial misconduct. Prosecutorial misconduct will not provide a basis for overturning a criminal conviction unless, on the record as a whole, the misconduct can be said to have deprived the appellant of a fair trial. *State v. Lott* (1990), 51 Ohio St.3d 160, 166, 555 N.E.2d 293, 301. Applying this standard, we find no merit to any aspect of this challenge.

The appellant cites, in support of this challenge, the state's failure to disclose in discovery his statement to Officer Pickens, the assistant prosecutor's use of the recorded radio transmission to "bolster" the officer's testimony, and the assistant prosecutor's remark in closing argument on the audacity of defense counsel's challenge to the officer's trustworthiness. As we determined *supra,* the first two of these alleged instances of misconduct involved no demonstrable prejudice to the appellant. In the third instance, the trial court in effect sustained defense counsel's objection to the remark when it admonished the assistant prosecutor to confine his remarks to the evidence. On the record before us, we are unable to conclude that these alleged instances of prosecutorial misconduct, either separately or together, deprived the appellant of a fair trial.

The appellant also assails the state's failure to disclose in discovery the photographs of him taken at police headquarters; the assistant prosecutor's attempt, on direct examination of Officer Pickens, to impugn defense counsel's motive in questioning the officer regarding the $100 discrepancy; the assistant prosecutor's misrepresentation of the facts in his argument opposing a finding of a discovery violation and in his closing argument; and remarks by the assistant prosecutor in his closing argument allegedly offering his personal opinion on the case and on the appellant's guilt, disparaging the appellant's invocation of his right to a jury trial, denigrating defense counsel and the defense's trial strategy, and vouching for Officer Pickens's credibility. Defense counsel offered no

objection to these alleged instances of prosecutorial misconduct. The appellant is thus precluded from predicating error on these alleged improprieties, unless they rise to the level of plain error. See Crim.R. 52(B); *State v. Slagle* (1992), 65 Ohio St.3d 597, 604, 605 N.E.2d 916, 924–925. On the record before us, we cannot say that, but for these alleged improprieties, either individually or in the aggregate, the outcome of the appellant's trial would have been otherwise. See *Slagle, supra* at 604–605, 605 N.E.2d at 925. Therefore, we overrule the appellant's third assignment of error.

## IV

In his fourth assignment of error, the appellant contends that he was denied the effective assistance of counsel. We find no merit to this contention.

The Ohio Supreme Court in *State v. Lytle* (1976), 48 Ohio St.2d 391, 2 O.O.3d 495, 358 N.E.2d 623, established a two-step inquiry into the question of whether a criminal defendant has been deprived of the effective assistance of counsel:

"First, there must be a determination as to whether there has been a substantial violation of any of defense counsel's essential duties to his client. Next, and analytically separate from the question of whether the defendant's Sixth Amendment rights were violated, there must be a determination as to whether the defense was prejudiced by counsel's ineffectiveness." *Id.* at 396–397, 358 N.E.2d at 627; see, also, *Strickland v. Washington* (1984), 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674; *State v. Bradley* (1989), 42 Ohio St.3d 136, 538 N.E.2d 373.

Trial counsel's performance will not be deemed ineffective unless the defendant shows that "counsel's representation fell below an objective standard of reasonableness," *id.*, and that "there exists a reasonable probability that, were it not for counsel's errors, the result of the trial would have been different." *Bradley* at 143, 538 N.E.2d at 380.

The appellant contends that his trial counsel violated essential duties by failing to object to Officer Pickens's testimony about statements barred by the hearsay rule and about statements not provided in discovery; by failing to object to the admission of the photographs on the ground that they were not provided in discovery, to the assistant prosecutor's misrepresentations of the facts to the trial court and to the jury, and to improper aspects of the state's closing argument; by failing to request a sidebar conference to object when the trial court's questioning of Officer Pickens supplied the only evidence on the element of the handgun's concealment; and by derisively commenting on his client during a subsequent sidebar conference.

We are unable to conclude that the appellant was prejudiced by defense counsel's performance at trial, when our examination of the record of the proceedings below does not disclose a reasonable probability that, but for counsel's performance, the result of the trial would have been different. See *Bradley, supra.* We, therefore, overrule the fourth assignment of error.

## V

■ In his fifth and final assignment of error, the appellant contends that the trial court abused its discretion in precluding defense counsel from impeaching the credibility of Officer Pickens on cross-examination with matters contained in the officer's personnel file. We find no merit to this challenge.

Evid. R. 608(B) provides:

"Specific instances of the conduct of a witness, for the purpose of attacking or supporting the witness's character for truthfulness * * * may, * * * in the discretion of the court, if clearly probative of truthfulness or untruthfulness, be inquired into on cross-examination of the witness (1) concerning the witness's character for truthfulness or untruthfulness * * *."

The appellant has failed to specify, and we are unable to discern, any matter in Officer Pickens's personnel file that might be probative of the officer's character for truthfulness or untruthfulness. We are, therefore, unable to conclude that the trial court, in limiting defense counsel's cross-examination of Officer Pickens, abused its discretion. See *State v. Clark* (Aug. 14, 1991), Hamilton App. Nos. C–900245 and C–900246, unreported, 1991 WL 155213. Accordingly, we overrule the fifth assignment of error.

Finding no error in the proceedings below prejudicial to the appellant, we affirm the judgment of the trial court.

*Judgment affirmed.*

MARIANNA BROWN BETTMAN, P.J., concurs.

PAINTER, J., concurs in judgment only.

RAYMOND E. SHANNON, J., retired, from the First Appellate District, sitting by assignment.

PAINTER, Judge, concurring in judgment only.

I agree with the majority's conclusion that the audiotape of Officer Pickens's radio transmission on December 31, 1996 was an admissible exception to hearsay under Evid.R. 803(1). The tape is a play-by-play recording of Officer Pickens's

pursuit of Penland. In my mind, that fact is conclusive as to the trustworthiness of the tape. An officer chasing an armed suspect does not lie. The tape represents a clear example of a "present sense impression" under Evid.R. 803(1).

I also agree with the majority's analysis that the prosecution violated its duty to disclose Penland's statement regarding his possession of the gun. And I agree that the record discloses that the prosecution's violation was not intentional. As the majority correctly notes, there was no prejudice to Penland here. So, on this record, considering the overwhelming evidence, I concur in the affirmance.

But we must remember that one major purpose of disclosing statements is to prevent their *ad hoc* manufacture at trial. See *State v. Moore* (1988), 40 Ohio St.3d 63, 67, 531 N.E.2d 691, 695 (to prevent unfair surprise); *State v. Crosby* (July 9, 1990), Pickaway App. No. 88 CA 40, unreported, 1990 WL 105438 (to prevent a "trial by ambush"). We should not have to keep emphasizing, as aptly demonstrated in the majority opinion, that "ignorance is no excuse." Certainly, in a closer case, the failure of the police to disclose a statement to the prosecution, or its omission from discovery, for whatever reason, might well result in a mistrial or a reversal. That eventuality, with its attendant waste of time and resources, can be better prevented by scrupulous attention to discovery matters than justified at the appellate level.

Like its treatment of the statement, the prosecution did not disclose the photographs of Penland. The above comments apply equally to the photographs. The majority holds that the failure to disclose the photographs was a willful violation of discovery by the prosecution and that their admission was an abuse of the trial court's discretion because the photos were violative of the "other-acts" prohibition of Evid.R. 404(B). That being the case, if I agreed that the photos were inadmissible, I would reverse. But I do not agree with the majority that the photos were inadmissible.

Where I differ with the majority's analysis is that I believe that the photographs were admissible and that the trial judge surely did not abuse his discretion by admitting them. While I believe that the improper use of so-called "other-acts" evidence is rampant in this county, I do not think the rule was violated here. The photographic evidence of Penland's alleged intoxication on the night of the offense was not forbidden other-acts evidence. Rather, the evidence was properly used to impeach Penland's credibility. Evid.R. 607. First, Penland took the stand and testified to the evening's events. Whether he was intoxicated at the time was surely relevant to both his perception of the events and his memory of them. See *Johnson v. Knipp* (1973), 36 Ohio App.2d 218, 221–224, 65 O.O.2d 342, 344–346, 304 N.E.2d 914, 917–918. Second, the photographs served to contradict his claim that he was not intoxicated on the night in question. See *Harper v. State* (1922), 106 Ohio St. 481, 485, 140 N.E. 364, 365 ("[e]vidence

relevant upon the question of credibility, especially of an interested witness, is in no sense collateral"). If a witness testified that he was wearing his glasses and saw clearly—but photographs taken of him at the time showed no glasses—those photos would be extremely relevant. The same is true here. The majority just goes down the wrong road, in my view, when it likens the pictures to other-acts evidence.