2-10-179-CR








 




 
 
 
 
 
  
 
 
 
 
 
 
 
 
 
 
 
 COURT OF APPEALS
 SECOND DISTRICT OF TEXAS
 FORT WORTH
 
 




 

 

NO. 02-10-00179-CR

 

 




 
 
 Abraham Godinez
 
 
  
 
 
 APPELLANT
 
 
 
 
  
 V.
  
 
 
 
 
 The State of Texas
 
 
  
 
 
 STATE
 
 




 

 

----------

FROM County
Criminal Court No. 5 OF Denton
COUNTY

----------

MEMORANDUM
OPINION[1]

----------

A
jury convicted Appellant Abraham Godinez of felony driving while intoxicated
(DWI) in Denton County’s County Criminal Court No. 5, which has concurrent
felony DWI jurisdiction with the Denton County district courts when the case is
properly assigned.[2]  The jury assessed his
punishment at seven years’ confinement, and the trial court sentenced him
accordingly.  The jury returned a negative finding to the deadly weapon
question.

Appellant
brings two issues on appeal, arguing that the trial court reversibly erred by
admitting the audiotape of Taylor Cox’s telephone call to the 9-1-1 operator
when he was not called as a witness because (1) Cox’s statements were
inadmissible hearsay and improperly bolstered other testimony and (2) the
audiotape’s admission denied Appellant his constitutional rights of
confrontation and cross-examination.  We hold that the trial court erred by
admitting the audiotape in its entirety because a large portion of it contained
testimonial hearsay, and the admission of the tape when the declarant was not present
in court for confrontation and cross-examination violated Appellant’s Sixth
Amendment rights under the Constitution of the United States.[3] 
But because we must also hold that such error was harmless, we affirm the trial
court’s judgment. 

Summary
of the Facts

At
trial, Barry Pennell, who was Aubrey’s police chief at the time of Appellant’s
arrest, testified that as he was driving home one night, he observed Appellant’s
vehicle driving below the posted speed, swerving, and making “jerky” motions. 
Pennell called Denton County law enforcement dispatch and reported Appellant’s
location.  Pennell continued to follow Appellant and, after Appellant exited
the freeway, witnessed him weave into the oncoming lane.  Denton police officer
Elisa Whidon stopped Appellant after she saw him cross over the center stripe
of the road and into oncoming lanes.  Whidon testified that when she stopped
Appellant, she noted the odor of alcohol on his person.

Denton
police officer Mark King arrived on the scene after Whidon had stopped
Appellant.  King testified that Appellant failed field sobriety tests, smelled
of alcohol, and stood with a circular sway.  Appellant was arrested for DWI and
refused to provide a blood or breath specimen.

Prior
to Whidon’s stop of Appellant, another driver, Taylor Cox, had called 9-1-1 and
reported that Appellant was driving erratically and that he believed Appellant
was intoxicated.  While on the phone, Cox described his observations of
Appellant’s driving to the 9-1-1 operator, making statements such as, “He
almost hit a guy head on,” “He’s all over the road; he’s going from yellow line
to white line,” and “He is driving very erratically, going from five miles [per
hour] up to fifty.  He’s about to hit a barrier.  He just missed it.  He’s
crossing the dash-line, playing chicken.”  At trial, the State offered as Exhibit
2 the audiotape of Cox’s call.  The trial court admitted the audiotape over
Appellant’s objection.  Cox was not called as a witness.  Leslie Jackson, the
9-1-1 operator who took the call, did testify.

Confrontation
and Cross-Examination

Taylor
Cox’s portion of the audiotape begins with his report of bad driving by the
operator of a pickup truck with Mexico license plates.  Jackson responded by
trying to verify his location but soon announced that she was broadcasting the
information.  Cox reported that he had just exited the freeway.  Pennell also
exited the freeway behind the pickup truck.  Both men, apparently, followed
Appellant for a time before they exited the freeway.  Although Cox turned on
his strobe light and provided editorial commentary in describing the pickup
truck’s movements, Jackson at first made only statements trying to verify Cox’s
location and contact information.  She asked if Cox was “still following,” his
name, his phone number, and his home address.  She also asked, “Where are you
now?” and  “I’m sorry.  Where are you at?”  Statements made to police in
response to questions propounded for the purpose of directing patrol officers
to the correct location to deal with the emergency are not testimonial.[4]

Then
there was an excited “Golleeeee!” from Cox, and Jackson asked Cox what had happened. 
From that point on, Cox’s statements were clearly testimonial and in response
to questions such as, “Did he go through the red light?”, “How’s he driving?”, “You’re
right there in the construction?  How is he doing?”, and “How fast are you
going?”[5]  And the State did not
show that the statements Cox made in response to Jackson’s question were
present sense impressions.[6]  The Texas Court of
Criminal Appeals has addressed the issue of the admissibility as present sense
impression of “factual observations, narrations, opinions, and conclusions made
by a citizen or bystander that might be intended by the declarant to be made
with an eye toward future litigation or evidentiary use[:]”[7]

The recorded factual
observations made by police officers investigating a suspected crime are not
the type of “non-reflective” street-corner statements of objective observers
that the present sense impression exception is designed to allow.  Courts admit
present sense impression statements precisely because they are non-narrative,
off-hand comments made without any thought of potential litigation by a neutral
and detached observer without any motive to fabricate, falsify, or otherwise
exaggerate his observations.

Conversely,
on-the-scene observations and narrations of a police officer conducting a
roadside investigation into a suspected DWI offense are fraught with the
thought of a future prosecution:  the police officer is gathering evidence to
use in deciding whether to arrest and charge someone with a crime.  Calculation
and criminal litigation shimmer in the air;  the officer is gathering evidence,
he is not making an off-hand, non-reflective observation about the world as it
passes by. Similarly, factual observations, narrations, opinions, and
conclusions made by a citizen or bystander that might be intended by the
declarant to be made with an eye toward future litigation or evidentiary use
are inadmissible under the rule.[8]

For
the same reasons that Cox’s responses to Jackson’s questions were hearsay and
not admissible as present sense impressions, they were likewise not
non-testimonial statements that could be admitted into evidence without
allowing Appellant the opportunity to confront and cross-examine the
declarant.  The State did not sustain its burden to show that these questions and
Jackson’s statement that if Appellant was intoxicated, the district attorney would
want Cox’s identifying information (implying that the State would prosecute
Appellant) were not made for purposes of establishing facts for later
prosecution.[9]  Once Jackson had advised
patrol officers of Appellant’s location and the route he was traveling, Jackson
had fulfilled her role in containing any emergency.  Her questions about
whether Appellant had run a red light and how he was driving were not shown by
the State to be other than information-gathering for purposes of prosecution.  When
a marked police unit appeared, Pennell, Cox, and the unit followed the truck,
watching it cross the center stripe; Jackson had no role in containing an
emergency.  As in Fischer, Cox might testify to exactly what he saw and
heard during his observation of Appellant, and his words “might be the very
same as those he used during his on-the-scene narrative, but they must be given
under oath and subject to cross-examination.”[10]

Cox clearly
had prosecution in mind when he offered to pull over behind the marked cars to
talk to the police, but Jackson told him to go on.  She told him that she had
his information and that if the driver was intoxicated, the district attorney
would use the information Cox had provided to contact him.

Appellant
objected that the audiotape was hearsay, violated Crawford, and
improperly bolstered Pennell’s testimony.  The trial court overruled the
objections and admitted the entire audiotape.  The trial court abused its
discretion in doing so.  Normally the bolstering objection would be an
evidentiary objection without constitutional implications.  In the context of
the confrontation objection, the bolstering question also informs the harm
analysis of the Sixth Amendment issue.

Because
we determine that the error is constitutional, we apply rule 44.2(a).[11] 
The question is whether the trial court=s
error in admitting the audiotape in its entirety absent Cox’s testimony was
harmless beyond a reasonable doubt.[12]  In applying the Aharmless
error@
test, our primary question is whether there is a Areasonable
possibility@ that the error might have contributed
to the conviction.[13]

Our
harmless error analysis should not focus on the propriety of the outcome of the
trial; instead, we should calculate as much as possible the probable impact on
the jury in light of the existence of other evidence.[14] 
We consider the source and nature of the error, the extent that it was
emphasized by the State, its probable collateral implications, the weight a
juror would probably place on the error, and whether declaring it harmless
would be likely to encourage the State to repeat it with impunity.[15] 
This requires us to evaluate the entire record in a neutral, impartial, and
even-handed manner, not Ain the light most favorable
to the prosecution.@[16]

The Texas
Court of Criminal Appeals has provided a test to be employed by appellate
courts in assessing improperly admitted Crawford-barred testimony:

Some Texas courts have also applied [Delaware
v.] Van Arsdall or Shelby [v. State], with the assumption
that the purposes of cross-examination were fully met, to improperly admitted
evidence.  But when a witness does not testify at trial, it is difficult, if
not impossible, to gauge how cross-examination might have impeached his
in-court testimony, what bias he might have admitted to, what inconsistent
statements he might have made during his testimony, how his demeanor might have
affected the jury, and so forth.  As the Supreme Court has stated, “such an
inquiry would obviously involve pure speculation, and harmlessness must
therefore be determined on the basis of the remaining evidence,” while putting
aside the out-of-court declarant’s testimony.

We therefore take this opportunity to
clarify that the Van Arsdall initial assumption (“that the damaging
potential of the cross-examination [was] fully realized”) applies to
confrontation errors of exclusion, not confrontation errors of admission.  On
the other hand, most of the non-exclusive list of factors set out in Van
Arsdall may well be applicable in analyzing whether constitutional error in
the admission of evidence is harmless under a Chapman [v. California]
analysis.

Thus, courts reviewing whether the
error in admitting out-of-court statements in violation of Crawford is
harmless beyond a reasonable doubt should consider:

(1) The importance of the hearsay
statements to the State’s case;

(2) Whether the hearsay evidence was
cumulative of other evidence;

(3) The presence or absence of
evidence corroborating or contradicting the hearsay testimony on material
points; and

(4) The overall strength of the
prosecution’s case.

Of course courts may consider other
factors as well, but, in the final analysis, the reviewing court must be
convinced, beyond a reasonable doubt, that the admission of Crawford-barred
testimony would probably not have had a significant impact on the mind of an
average juror.  Put another way, is there a reasonable possibility that the Crawford
error, within the context of the entire trial, “moved the jury from a state of
non-persuasion to one of persuasion” on a particular issue?[17]

We
address the Davis issues in order:

(1)        
The
facts in Cox’s statement were not important because they also came in through
Pennell’s testimony;

(2)        
Cox’s
hearsay evidence was cumulative of Pennell’s testimony;

(3)        
Only
Pennell’s testimony was available to corroborate or contradict Cox’s testimony
on material points of the earlier portions of Appellant’s driving, but Whidon
testified to seeing Appellant’s truck cross the center stripe; and

(4)        
The
prosecution’s case rested on Pennell’s testimony; testimony of the arresting
officer Whidon who witnessed Appellant’s pickup crossing the center line and
who smelled the odor of alcohol; the testimony of Officer King who testified to
the odor of alcohol and Appellant’s swaying and failing field sobriety tests;
and Jackson’s testimony about receiving Cox’s call.  Clearly, Cox’s statements
were more dramatic than Pennell’s and Whidon’s testimony, and clearly Cox’s
statements did bolster Pennell’s testimony.  But there was also testimony from
Whidon and King.

A
fifth consideration not contained in the Davis factors is the gratuitous
statement by Jackson that the district attorney would prosecute Appellant if he
was drunk.  The district attorney did, indeed, prosecute Appellant.  The trial
court’s admission of that statement is akin to admitting a statement by a
prosecutor that the State would not be prosecuting a defendant if he were not
guilty.[18]  Jackson’s statement is
probably the most egregious part of the audiotape.  But Jackson testified at
trial, and Appellant had the opportunity to confront and cross-examine her. 
Appellant made no objection to her statements on the audiotape and makes no
complaint on appeal regarding the audiotape except the denial of confrontation
and cross-examination and bolstering.  Jackson’s statements are not
inadmissible on any of these grounds.

Although
it was clearly error to admit the audiotape when there was no expectation that
Cox would be present for purposes of confrontation and cross-examination, given
the record before us, and with grave reservations about Jackson’s statement, we
hold that the error was harmless beyond a reasonable doubt.

Conclusion

Having
held that the trial court abused its discretion by admitting the audiotape but
that its admission was harmless, we overrule Appellant’s two issues.

 

 

LEE ANN DAUPHINOT
JUSTICE

 

PANEL: 
DAUPHINOT, WALKER, and MCCOY, JJ.

 

WALKER,
J. concurs without opinion.

 

MCCOY,
J. filed a concurring opinion.

 

DO
NOT PUBLISH

Tex.
R. App. P. 47.2(b)

 

DELIVERED:  July
7, 2011










 

 

 

COURT OF APPEALS

SECOND DISTRICT OF TEXAS

FORT WORTH

 

NO. 02-10-00179-CR

 

 


 
 
 ABRAHAM GODINEZ
 
 
  
 
 
 APPELLANT
 
 
 
 
  
 V.
  
 
 
 
 
 The State of Texas
 
 
  
 
 
 STATE
 
 


 

 

----------

FROM COUNTY CRIMINAL COURT NO. 5 OF DENTON
COUNTY

----------

CONCURRING
MEMORANDUM OPINION[19]

----------

I
concur in the majority’s conclusion that any error was harmless, but I write
separately because I do not agree that the holding in Fischer generally
extends to exclude the non-police eyewitness’s responses to the 9-1-1
dispatcher’s questions about Godinez’s behavior made here before the police
arrived.  See  Fischer v. State, 252 S.W.3d 375, 387 (Tex. Crim.
App. 2008).  In Fischer, the court of criminal appeals held that the
present-sense-impression exception to the hearsay rule did not apply to a law
enforcement officer’s factual observations of a suspect that had already been
pulled over for a traffic violation, which were contemporaneously dictated on
his patrol-car videotape as the officer conducted a DWI investigation.  Id. 
Although the court indicated that “factual observations, narrations, opinions,
and conclusions made by a citizen or bystander that might be intended by the
declarant to be made with an eye toward future litigation or evidentiary use
are inadmissible under the [hearsay] rule[,]” I do not agree that the facts of
this case demonstrate that the statements that the citizen eyewitness in this
case, Cox, made to the 9-1-1 dispatcher regarding Godinez’s actions, were made
with an eye toward future litigation.  See id. at 384. 

In
its analysis, the court of criminal appeals distinguished Fischer from Ohio
v. Penland, 724 N.E.2d 841 (Ohio App. 1998), “a case that appropriately
concluded that a radioed recording by an officer in hot pursuit of a fleeing
suspect was admissible as a present sense impression,” and it noted that the
“scenario [in Penland]—the description of a chase while it is occurring,
transmitted to his dispatcher—[was] precisely the sort of unreflective,
uncalculated, non-testimonial ‘street-corner’ statement that is admissible
under Rule 803(1), even when made by a law enforcement officer.”  Id. at
386.  The court specifically distinguished the status of the events in Penland—statements
made by an officer during hot pursuit—from those in Fischer—statements
made by an officer after the suspect vehicle was stopped by the side of the
road while he “carefully and deliberately narrated the results of his DWI field
tests and investigation.”  Id.  

Here,
the record reflects that Cox, who had called 9-1-1 to report Godinez as a
possible drunk driver, was still following Godinez and reporting Godinez’s
actions and current location during his exchange with the 9-1-1 dispatcher. 
The record also reflects that at the time of this exchange, the police had not
yet arrived on scene or intercepted Godinez’s vehicle.  Thus, the emergency had
not yet been contained, and the exchange between Cox and the dispatcher was
necessary to ensure that any change in Godinez’s route was communicated to the
responding officers.  

Further,
I cannot subscribe to the majority’s assertion that “Cox clearly had
prosecution in mind when he offered to pull over behind the marked cars to talk
to the police.”  See Maj. op. at 6.  But even if Cox contemplated
Godinez’s prosecution when he made the offer, his intentions at that time are
not relevant to his earlier exchange with the dispatcher before the police
arrived.  For these reasons, I concur in the outcome.

 

BOB
MCCOY
JUSTICE

DO
NOT PUBLISH

Tex. R. App.
P. 47.2(b)

DELIVERED:  July
7, 2011









[1]See Tex. R. App. P. 47.4.





[2]See Tex. Gov’t Code
Ann. § 25.0634(a) (West 2004).





[3]See U.S. Const.
amend. VI; see generally Crawford v. Washington, 541 U.S. 36, 124 S. Ct.
1354 (2004).





[4]Davis v. Washington, 547
U.S. 813, 821–22, 126 S. Ct. 2266, 2273–74 (2006).





[5]See Wall v. State,
184 S.W.3d 730, 735–36 (Tex. Crim. App. 2006).





[6]See Tex. R. Evid.
803(1).





[7]Fischer v. State,
252 S.W.3d 375, 383, 384 (Tex. Crim. App. 2008).





[8]Id. at 383–84
(citations omitted) (emphasis added).





[9]Davis, 547 U.S at
821–22, 126 S. Ct. at 2273–74.





[10]Fischer, 252
S.W.3d at 387.





[11]Tex. R. App. P. 44.2(a).





[12]See Williams v. State,
958 S.W.2d 186, 194 (Tex. Crim. App. 1997).





[13]Mosley v. State,
983 S.W.2d 249, 259 (Tex. Crim. App. 1998) (op. on reh=g), cert. denied, 526 U.S. 1070 (1999).





[14]Wesbrook v. State,
29 S.W.3d 103, 119 (Tex. Crim. App. 2000), cert. denied, 532 U.S. 944
(2001).





[15]Harris v. State,
790 S.W.2d 568, 587 (Tex. Crim. App. 1989).





[16]Id. at 586.





[17]Davis v. State, 203
S.W.3d 845, 851–53 (Tex. Crim. App. 2006) (citations omitted), cert.
denied, 549 U.S. 1344 (2007).





[18]See Wilson v.
State, 938 S.W.2d 57, 63–64 (Tex. Crim. App. 1996) (Mansfield, J.,
dissenting), overruled on other grounds by Motilla v. State, 78 S.W.3d
352, 357 n.26 (Tex. Crim. App. 2002).





[19]See Tex. R. App.
P. 47.4.