[Cite as *State v. Allbritain*, 2020-Ohio-2963.]

COURT OF APPEALS
GUERNSEY COUNTY, OHIO
FIFTH APPELLATE DISTRICT

| | | |
|---|---|---|
| STATE OF OHIO | : | JUDGES: |
| | : | |
| | : | Hon. William B. Hoffman, P.J. |
| Plaintiff-Appellee | : | Hon. W. Scott Gwin, J. |
| | : | Hon. Patricia A. Delaney, J. |
| -vs- | : | |
| | : | Case No. 19CA000050 |
| | : | |
| NATHAN ALLBRITAIN | : | |
| | : | |
| | : | |
| Defendant-Appellant | : | O P I N I O N |

CHARACTER OF PROCEEDING:      Appeal from the Cambridge Municipal
Court, Case No. 19TRD06336

JUDGMENT:      AFFIRMED

DATE OF JUDGMENT ENTRY:      May 14, 2020

APPEARANCES:

For Plaintiff-Appellee:

CAMBRIDGE LAW DIRECTOR
WILLIAM H. FERGUSON
150 Highland Ave., Ste. 2
Cambridge, Ohio43725

For Defendant-Appellant:

STEVEN P. GOODIN
KELLIE A. KULKA
BENJAMIN C. WHITE
GRAYDON HEAD & RITCHEY LLP
312 Walnut Street, Suite 1800
Cincinnati, Ohio 45202

*Delaney, J.*

{¶1}   Defendant-Appellant Nathan Allbritain appeals from the October 23, 2019 Journal Entry of the Cambridge Municipal Court finding him guilty of a speeding violation.

**FACTS AND PROCEDURAL HISTORY**

{¶2}   On August 3, 2019, at approximately 11:30 pm, Trooper Howard of the Ohio State Highway Patrol was parked at a crossover on Interstate 77 near mile post 46. The posted speed limit in that area of the highway is 70 mph. His attention was drawn to appellant's vehicle as it appeared it was operating above the posted speed limit. Trooper activated an Ultralight 2020 speed measuring device to check appellant's speed.  The laser indicated two checks, the first at 82 mph and the second at 78 mph.

{¶3}   Howard initiated a traffic stop and cited appellant for speeding in violation of R.C. 4511.21(D)(4).  The citation provided appellant with an arraignment date of August 14, 2019.

{¶4}   On August 14, 2019, appellant, proceeding pro se, executed a waiver of time and appeared before a magistrate and entered a plea of not guilty. A trial before the magistrate was scheduled for October 8, 2019.

{¶5}   On October 1, 2019, appellant filed a written discovery request "for copies of all audio and video in regards to case No. 19TRD06336".  On October 2, 2019, the state responded to the request pursuant to Crim. R. 16(B) and Crim. R. 12(D).

{¶6}   The case proceeded to trial on October 8, 2019.  Appellant proceeded pro se. Trooper Howard was called as the state's witness. The trooper testified he was employed with the State Patrol for five years and was trained in the use of speed detection devices and the visual estimation of speed.  On the day and time in question, he was

stationary in a crossover on Interstate 77 in a marked cruiser.  At the beginning and end of his shift, he conducted a calibration check on the Ultralight 2020 and determined that it was in proper working order. The magistrate took judicial notice of the scientific reliability of the Ultralight 2020.  Using said device, the Trooper checked appellant's speed and it recorded speeds of 82 mph and 78 mph.  He made the decision to pull appellant over and stated he didn't remember anything abnormal about the stop. (T. at 12).

{¶7}   On cross-examination, Trooper Howard testified that there is a dash camera and it should have been on that evening.  Appellant stated to the magistrate that he had asked for a copy of the "dash cam" and it was not given to him before trial.  The state responded it did not have a copy of the video and had not requested any video in August. The state further elaborated:  "Your Honor, we received a discovery request on October 1st. My office then provided all that we had in the file. So all we had at that point was ah, the citation, the LEADS and prior case history.  At this point, typically the Post deletes (sic) their video after a certain period of time. We believe that we were outside of that time so we didn't have any video." (T. at 16)

{¶8}   The magistrate then inquired whether the state had made any inquiry to see if a video existed after appellant had filed his letter. The state responded in the negative and the magistrate postponed the trial for the state to provided appellant with anything that exists. (T. at 16).

{¶9}   The magistrate further advised appellant: "Now Mr. Allbritain, I want to caution you about something. The ***, indication here from the Law Director is that it is their understanding that this video is only saved for thirty days. All right? So you will be entitled to receive anything that current, that existed, all right? So ***, but and they are

required to respond to you ***, indicating that ***, but since there was no order or request for any order for them to preserve this video ***, they are required to preserve the video **, they are required to just keep it in the normal course of business." (T. at 17).

{¶10} The magistrate continued the trial for two weeks for the state to "secure any existing video" and to provide it to appellant. (T. at 19; Judgment Entry of October 8, 2019)

{¶11} On October 9, 2019, appellant filed a motion to dismiss on the grounds: "Guilt by omission due to prosecutor not turning over dash cam evidence that was discover (sic) during the first trial hearing on October 8 at 10:30 A.M. to have been recorded during the traffic stop. The Brady Doctrine (Brady v. Maryland 1963) due to the prosecutor not turning over all evidence before trial in order for Nathan R. Allbritain to properly be able to defend himself against the charges despite several phone calls made to both the municipal court and the prosecutor's office as well as a formal written request being filed at the municipal court. I feel that this falls under one of the four types of prosecutorial misconduct which is suppressing evidence. Failure to release public records."

{¶12} The same day, the state responded, in part, that "No digital media exists." (State's Response to Defendant's Discovery Request and Notice of Intent to Use Evidence, filed October 9, 2019).

{¶13} Trial resumed on October 22, 2019. The magistrate indicated she would hear the motion to dismiss at the conclusion of the evidence to determine whether there had been a discovery violation. (T. at 3, of October 22, 2019).

{¶14} The trooper was recalled as a witness by the state and testified generally that after a traffic stop any video is stored in the car recorder and then uploaded at the

post to a computer program at the end of the shift. The video is saved for a period of time and then it does "fall off" unless the trooper "flags it" at the end of traffic stop or at the end of the day for an administrator to save. The trooper testified that he generally does not flag speeding stops and did not do so for the instant stop. (Id. at 7).

{¶15} The trooper further explained that if a stop is not flagged, the video is "shed" pursuant to the patrol's normal policy. If no further request is made for the video within that time, the patrol as no ability to go back and obtain the video after it has been destroyed pursuant to policy. (Id. at 8).

{¶16} On cross-examination, the trooper testified it is common for him to pull up alongside a vehicle prior to initiating a stop (coming behind the vehicle and activating lights) so he can better read the license plate to get to the dispatcher. (Id. at 9).

{¶17} The following exchange then occurred:

DEFENDANT: Do you remember ah, as we were going down the interstate when you were beside me, do you remember the car that was getting on the on-ramp at exit 46 that almost crashed into us when I tried to merger (sic) and you, you was (sic) beside me and I couldn't get over and I, I kept letting off and you kept getting behind, staying beside me so I couldn't merge over?

TROOPER: I don't remember a specific situation there, no.

DEFENDANT: Would that have been on the video if the video had not been destroyed?

TROOPER: Potentially yes. Depending on how far ahead it had been. I think it back records about a minute and a half from when the lights come on so…

DEFENDANT: Ninety seconds, correct?

TROOPER: I think so.

DEFENDANT: Okay ah, do you remember when you pulled up beside me and you had, and you, you told me, I told, I explained to you that I didn't know that you was in my blind spot and I didn't intentionally try and swerve at you or do anything evasive, I was trying to miss the car and, and you said that you saw the car on the on-ramp that didn't, that was coming at a high rate of speed and that was, you understood that I didn't try and intentionally do anything to you as far as run itno you or anything, do you remember that?

TROOPER: I don't remember that conversation. No.

DEFENDANT: But that would be on the video as well, correct?

TROOPER: Right, it should be.

DEFENDANT: If it wasn't deleted?

TROOPER: Correct.

DEFENDANT: Okay, ah, do you also, during the stop, remember that you ah, recall that you asked ah, you told me that you sometimes pull alongside people to keep them out of the median so they know that they are not in the grass?

TROOPER: Ah, rephrase that a little bit?

DEFENDANT: You, you stated that you will ride alongside someone because you said that that will help them know not to stay out of the median grass, so that they know where the median is at?

TROOPER: Okay, I mean, I guess it serves multiple purposes but correct, that is much more dangerous having a traffic stop in the median.

DEFENDANT: But that would have been on the video as well?

TROOPER: If we had that conversation I suppose it would be.

(Id. at 10-12)

{¶18} Thereafter, the magistrate heard argument on appellant's motion to dismiss due to the alleged discovery violation. The magistrate denied the motion, finding the appellant requested the dash cam video after it had already been deleted. Furthermore, the magistrate found the video had "absolutely nothing to do with exculpatory evidence as it relates to speeding" and that the appellee had not engaged in any discovery violation. (Id. at 16).

{¶19} The appellant was found guilty of speeding, a minor misdemeanor, and fined $150 by the magistrate. By entry, dated October 23, 2019, the trial court adopted the magistrate's decision as its final order.

{¶20} Appellant filed an appeal, and the matter is now before this court for consideration. He raises a single assignment of error as follows:

{¶21} "THE TRIAL COURT ERRED IN DENYING THE APPELLANT'S MOTION TO DISMISS."

**ANALYSIS**

{¶22} Appellant argues the dash cam video was material and/or potentially useful to him for these reasons: 1) the video would have showed reckless driving on the part of the Trooper which required appellant to drive defensively to avoid a wreck with a merging vehicle; (2) the Trooper's testimony that it was a normal and ordinary stop was not credible; and (3) the State acted in bad faith when it did not flag the video for preservation upon appellant pleading not guilty at arraignment.

{¶23} The record reflects appellant raised the issue of the alleged discovery violation before the magistrate prior to trial; the magistrate concluded there was no discovery violation because the request was untimely and the video was not relevant or exculpatory as to the issue of appellant's speed. The video was not requested within the law enforcement agency's 30-day retention policy, and the cruiser video was not activated until after the trooper observed the speeding violation.

{¶24} As an initial matter, we observe appellant failed to bring the alleged discovery violation to the attention of the trial court via objections to the magistrate's findings. Crim. R. 19(D)(3)(b)(iv) provides, "Except for a claim of plain error, a party shall not assign on appeal the court's adoption of any factual finding or legal conclusion, whether or not specifically designated as a finding of fact or conclusion of law under Crim. R 19(D)(3)(a)(ii), unless the party has objected to that finding or conclusion as required by Crim. R. 19(D)(3)(b)." The appellant thus waived any error arising from the court's failure to impose an appropriate sanction, unless the failure to impose a sanction can be said to rise to the level of plain error. *State v. Penland*, 132 Ohio App.3d 176, 187, 724 N.E.2d 841, 849 (1st Dist.1998), citing Crim.R. 52(B).

{¶25} An error "does not constitute a plain error * * * unless, but for the error, the outcome of the trial clearly would have been otherwise." *State v. Long* , 53 Ohio St.2d 91, 7 O.O.3d 178, 372 N.E.2d 804 (1978), paragraph two of the syllabus. Pursuant to Crim.R. 52(B), "plain errors or defects affecting substantial rights may be noticed although they were not brought to the attention of the court." The rule places several limitations on a reviewing court's determination to correct an error despite the absence of timely objection at trial: (1) "there must be an error, i.e., a deviation from a legal rule," (2) "the error must

be plain," that is, an error that constitutes "an 'obvious' defect in the trial proceedings," and (3) the error must have affected "substantial rights" such that "the trial court's error must have affected the outcome of the trial." *State v. Dunn,* 5th Dist. Stark No.2008–CA–00137, 2009–Ohio–1688, citing *State v. Morales,* 10 Dist. Franklin Nos. 03–AP–318, 03–AP–319, 2004–Ohio–3391, at ¶ 19 (citation omitted).

{¶26} The decision to correct a plain error is discretionary and should be made "with the utmost caution, under exceptional circumstances and only to prevent a manifest miscarriage of justice." *State v. Barnes,* 94 Ohio St.3d 21, 27, 2002–Ohio–68, 759 N.E.2d 1240 (2002), quoting *State v. Long,* 53 Ohio St.2d 91, 372 N.E.2d 804 (1978), paragraph three of the syllabus.

{¶27} Appellant now argues on appeal that appellee failed to provide the videotape as required by Crim.R. 16(B). Prosecutorial violations of Crim.R. 16 are reversible only when there is a showing that (1) the prosecution's failure to disclose was a willful violation of the rule, (2) foreknowledge of the information would have benefited the accused in the preparation of his defense, and (3) the accused suffered some prejudicial effect. *State v. Joseph*, 73 Ohio St.3d 450, 458, 653 N.E.2d 285 (1995), citing *State v. Parson*, 6 Ohio St.3d 442, 445, 488, 453 N.E.2d 689 (1983). An appellant waives a Crim.R. 16(B) issue for all but plain error if appellant did not preserve the issue for appellate review. See, *State v. Cunningham,* 103 Ohio St.3d 197, 2004-Ohio-7007, 824 N.E.2d 504; see also, *Penland* , supra, 132 Ohio App.3d at 187.

{¶28} In the instant case, there is no evidence of a willful discovery violation. Appellant could have requested the videotape be preserved via a motion to preserve evidence. He failed to request it within the period of records retention.  There is no

evidence the state purposely took direct action to destroy the tape or acted in bad faith. Appellant has not demonstrated that the videotape would have changed the outcome of the trial. The videotape was not relevant to the issue of appellant's speed; the video was thus neither exculpatory nor inculpatory.

{¶29} We thus find no plain error affecting appellant's substantial rights. *State v. Bennett*, 5th Dist. Guernsey No. 2010-CA-34, 2011-Ohio-4527, ¶ 29.

{¶30} The sole assignment of error is overruled.

## CONCLUSION

{¶31} Accordingly, the judgment of the Cambridge Municipal Court is affirmed.

By: Delaney, J.,

Hoffman, P.J. and

Gwin, J., concur.